Argued and submitted October 13, affirmed December 13, 1989

## MR. LUSTRE CAR CARE CENTER,
*Petitioner,*

*v.*

## NATIONAL COUNCIL ON
## COMPENSATION INSURANCE et al,
*Respondents.*

(88-01-6; CA A50488)

783 P2d 1032

Mark S. Rauch, Salem, argued the cause for petitioner. With him on the brief was Garrett, Seideman, Hemann, Robertson & De Muniz, Salem.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent SAIF Corporation. On the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Rives Kistler, Assistant Attorney General, Salem.

Peter A. Ozanne, Portland, argued the cause for respondents National Council on Compensation Insurance and Oregon Council on Compensation Insurance. With him on the brief were William H. Replogle and Schwabe, Williamson & Wyatt, Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

**RIGGS, J.**

Petitioner seeks review of a final order of the Department of Insurance and Finance (Department), which upheld an Oregon Classification and Rating (OCR) committee's denial of petitioner's request for reclassification of a portion of its payroll for workers' compensation insurance rating. We review for errors of law and affirm. ORS 183.482(8).

Petitioner is a car wash facility with an enclosed tunnel for car washing operations and an office area separated from the tunnel by a concrete block wall and windows. The customer waiting area, in which automobile accessories are also displayed for sale, adjoins the office area. Customers bring their "menus" describing the car wash services that they have requested to a window in the wall of the office area. Office personnel tally the charge for the services and for any accessories that the customer is purchasing, accept payment and make change. Their other duties include bookkeeping, record keeping, correspondence and other general office duties. They do not work in any other area of the car wash facility. These facts are not disputed.

The National Council on Compensation Insurance (NCCI) is a licensed rating organization for workers' compensation insurance. SAIF, the compensation insurer for petitioner, uses NCCI's classifications and rates, which have been filed with and approved by the Department, to determine the premiums that it charges individual businesses. *See* OAR 836-42-020; OAR 836-42-045. To ensure that an employer has been classified correctly, ORS 737.505(2) provides that each rating organization "shall provide within this state a reasonable means whereby any person aggrieved by the application of its rating system may be heard * * * to review the manner in which such rating system has been applied in connection with the insurance afforded the person." If either the employer or the insurer disagrees with the organization's determination, it may appeal to the Department, which, "after a hearing[,] * * * shall affirm or reverse" the rating organization's decision.

NCCI and and its local representative, Oregon Council on Compensation Insurance (OCCI),[1] conducted an inspec-

---

[1] The Oregon NCCI office is now called the Northwest Service Office of NCCI. Because the office was called OCCI at the time of the proceedings on appeal, we refer to it by that name.

tion of petitioner in May, 1987. After that inspection, petitioner's employes performing the clerical and cashiering duties described above were reclassified from Code 8810, covering clerical employes, to Code 8387, covering car wash employes. The premium rate for Code 8387 is significantly higher than that for Code 8810. In an inspection amendment, NCCI permitted a reclassification from Code 8387 to 8810 for clerical employes working only during hours when the car wash was not operating. Petitioner appealed the reclassification to Code 8387 to the OCR committee, which upheld the OCCI rating. Petitioner then appealed to the Department, which also upheld the classification.

The basic OCCI rating system classifies payrolls by the employer's business, not by the various employments, occupations or operations within that business. Some standard exceptions for occupations common to many businesses have been developed, however. Employes who fall within a definition in the standard exceptions are classified under that exception rather than in their employer's business classification. Code 8810, a provision at issue here, is the standard exception for clerical office employes. It provides:

> "Clerical Office Employees - All employees engaged exclusively in bookkeeping, in record keeping, in correspondence, or in other office work where books or other records are kept or correspondence is conducted. This classification applies only to employees who work in areas physically separated from other operations by structural partitions and in which work of clerical employees as defined in this rule is performed exclusively. If such an employee has any other duty, the total payroll of that employee shall be assigned to the highest rated classification of operations to which the employee is exposed."

In his order and opinion, the hearings officer said:

> "Beyond clerical functions these employees, as an integral part of their work-day carry out diverse cashiering functions. Because of these cashiering functions it cannot be said that the bookkeeper/cashiers work exclusively as clerical office employees. In order to abide by the dictates of the *Basic Manual for Workers Compensation and Employers Liability Insurance,* such employees must work exclusively as clerical office employees to receive standard exception 8810."

Petitioner cites the discussion of Code 8810 in *Scopes*

*of Manual Classifications,* an interpretive manual also published by OCCI, which states:

> "Other clerical employees or operations assigned by analogy to this classification are bank tellers; * * * horse and dog race track parimutuel clerks and cashiers; bus terminal ticket sellers; airline or helicopter ticket sellers * * * away from airport or heliport locations * * *."

Petitioner notes that the responsibilities of the employes described above include cashiering and argues that, therefore, the cashiering duties of its employes should not exclude them from the clerical classification.

We conclude that the hearings officer correctly applied the pertinent code provisions. Regarding the passage quoted above, the employments included "by analogy" in the clerical exception are employments for which there is no other applicable governing class. In contrast, petitioner's employes do fall within a governing class, namely, Automobile Service Station and Drivers, Code 8837. No new exception is needed in order to classify them. Code 8810 *does* state that it applies only if the employe performs the described duties exclusively; if the employe has "any other duty," the rule requires that the employe be classified with the employer's governing class. The hearings officer concluded that petitioner's clerical and cashier employes performed duties not described in Code 8810 and, therefore, were correctly classified. We agree.[2]

Affirmed.

---

[2] Petitioner also assigns error to the Department's failure to rule on whether the classifications were discriminatorily applied. ORS 737.310(1). He contends that other carwash operations in Oregon have employes classified in Code 8810. Respondents argue that the issue was neither adequately raised nor proved. A finding in petitioner's favor on that claim would not be supported by substantial evidence.