Argued and submitted October 28, 1991, reversed February 26, SAIF's petition for reconsideration allowed and National Council on Compensation Insurance's petition for reconsideration denied by opinion June 10, 1992
See 113 Or App 445 (1992)

Daniel DURON,
dba Daniel Duron Company,
*Petitioner,*

*v.*

The Filings of the
NATIONAL COUNCIL ON
COMPENSATION INSURANCE
and SAIF Corporation,
*Respondents.*

(89-06-23; CA A66673)

826 P2d 107

Ted M. Miller, Portland, argued the cause and filed the brief for petitioner.

David L. Runner, Assistant Attorney General, Salem, argued the cause for respondent SAIF Corporation. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Peter A. Ozanne, Portland, waived appearance for respondent National Council on Compensation Insurance.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Warren, P. J., dissenting.

**EDMONDS, J.**

Employer seeks judicial review of a final order of the Department of Insurance and Finance (DIF) holding him liable for an additional premium for workers' compensation insurance. We reverse.

Employer is a construction contractor specializing in the installation of roofing. SAIF is employer's workers' compensation insurance carrier. Beginning in 1981, SAIF approved employer's use of three risk classifications for the work activities of his employees. That use continued through 1988. In 1989, SAIF audited employer's 1988 payroll and charged him an additional premium of $5,887.05 for that year. Before the audit, the work activities of the employees affected by SAIF's payroll change were grouped in risk classifications 5645 and 5551. After the audit, SAIF determined that their work activities should all be placed in classification 5551. Employer requested a hearing by DIF, at which he argued that SAIF was not entitled to make an additional assessment for 1988, unless it complied with the requirements of ORS 737.310(12). DIF ruled that SAIF's actions did not fall within the purview of ORS 737.310(12). Employer seeks review of that ruling.

ORS 737.310(12) (*since amended by* Or Laws 1991, ch 768, § 1)[1] provides:

"At the time a workers' compensation guaranty contract is issued, the insurer shall give written notice to the insured of the rating classifications to which the insured's employees are assigned and shall provide an adequate *description of work activities* in each classification. *The insurer shall not bill an insured for reclassifying employees during the policy year unless:*

"(a) The insured knew or should have known that the employees were misclassified;

---

[1] ORS 737.310(12) now reads:

"At the time an insurer issues a workers' compensation insurance policy to an insured for the first time, the insurer shall give written notice to the insured of the rating classifications to which the insured's employees are to be assigned and shall provide an adequate description of work activities in each classification. In the event an insurer recommences coverage following its termination, the notice required under this subsection must be given only if the gap in coverage exceeds six months. The insurer shall bill an insured for reclassifying employees in accordance with rules adopted by the director."

"(b)   The insured provided improper or inaccurate information concerning its operations; or

"(c)   The insured's operations changed after the date information on the employees is obtained from the insured." (Emphasis supplied.)

In holding that ORS 737.310(12) is inapplicable, DIF said:

"Petitioner argues in its exceptions that the proposed order did not address [the] ORS 737.310(12) exception criteria. However, since SAIF did not base the premium increase which resulted from the premium audit on a reclassification of 'employes' there was no need to address the exceptions to the statute. Respondent SAIF adjusted Petitioner's payroll reports to reflect higher payroll in Class 5551 and lower payroll in Class 5645. SAIF did not change the classification of Petitioner's employes. Petitioner's employes had both of these classifications prior to and throughout the premium year in question. * * * ORS 737.310(12) specifically addresses reclassification of employees. No where [sic] is it articulated that the statute extends to reclassification of payroll."

■      An administrative agency is not at liberty to limit or restrict the terms of a statute. *Cook v. Workers' Compensation Department*, 306 Or 134, 138, 758 P2d 854 (1988). Clear, unambiguous statutes are to be construed according to their plain meaning. ORS 174.010; *Satterfield v. Satterfield*, 292 Or 780, 782, 643 P2d 336 (1982). Under ORS 737.310(12), classifications for workers' compensation insurance are based on "work activities." "Reclassify" means "to group or segregate into classes again on a new basis" or "to move from one class, classification, or category to another." *Websters Third New International Dictionary* 1896 (unabridged 1976). Thus, the plain meaning of the statute is that reclassification may occur by assigning the work activities to a new classification or by changing the classification from one class to another. "Reclassification" of payroll[2] is simply the means by which the changes are accomplished.

---

[2] Although ORS 737.310(12) was not at issue in *Mr. Lustre Car Care v. Nat'l Council on Comp. Ins.*, 99 Or App 654, 783 P2d 1032 (1989), we used the terms "reclassifying employees" and "reclassifying payroll" interchangeably. In that case, the petitioner sought review of an order that denied its "request for *reclassification of a portion of its payroll* for workers' compensation insurance rating." 99 Or App at 656. (Emphasis supplied.) In reciting the facts, we said:

■■ DIF's ruling is merely an exercise in semantics. The effect of changing employer's payroll from classification 5645 to 5551 is to change the classification of the work activities of employees on the basis of a different assessment of risk of injury. Under the plain meaning of ORS 737.310(12), that action constitutes a reclassification of the work activities of affected employees. Although employer had incorrectly allocated some of the work activities to classification 5645, ORS 737.310(12) requires SAIF to demonstrate that employer knew or should have known that the employees were misclassified or that the employer had provided inaccurate information or that work activities of the employees changed after 1981. In the absence of such proof, SAIF was not entitled to bill employer for an additional premium for 1988. DIF erred in holding to the contrary.[3]

Reversed.

**WARREN, P. J.,** dissenting.

The majority concludes that ORS 737.310(12) (*since amended by* Or Laws 1991, ch 768, § 1) precludes SAIF from reallocating employer's payroll among previously assigned rating classifications. Because I do not believe that that statute limits SAIF's authority to reallocate payroll, I dissent.

ORS 737.310(12) provides:

"At the time a workers' compensation guaranty contract is issued, the insurer shall give written notice to the insured of the rating classifications to which the insured's employees

---

"After that inspection, petitioner's *employes* performing the clerical and cashiering duties described above *were reclassified* from Code 8810, covering clerical employes, to Code 8387, covering car wash employes. * * * In an inspection amendment, NCCI permitted a *reclassification* from Code 8387 to 8810 *for clerical employes* working only during hours when the car wash was not operating." 99 Or App at 657. (Emphasis supplied.)

[3] The dissent says that ORS 737.310(12) applies only to "reclassification" by assigning work activities to a new classification, as distinguished from assigning work activities from one existing classification to another. That interpretation is premised on the supposition that "[e]ach of these [ORS 737.310(12)(a), (b) and (c)] exceptions relates back to the date of the issuance of the policy." 111 Or App at 576. Contrary to that premise, each of the exceptions relates to the *policy year*, not to the original issuance of the policy. ORS 737.310(12) refers to a reclassification "during the policy year," which in this case was 1988. The issuance of the policy in 1981 is immaterial to SAIF's attempt to charge additional premiums for 1988. Moreover, DIF cannot, by rule (OAR 836-42-060), as suggested by the dissent, limit the statutory requirement for the retroactive assessment of premiums. *See Cook v. Workers' Compensation Department, supra.*

are assigned and shall provide an adequate description of work activities in each classification. The insurer shall not bill an insured for reclassifying employees during the policy year unless:

"(a) The insured knew or should have known that the employees were misclassified;

"(b) The insured provided improper or inaccurate information concerning its operations; or

"(c) The insured's operations changed after the date information on the employees is obtained from the insured."

That statute expressly precludes a workers' compensation insurer from reclassifying an employer's employees, unless one of the three exceptions applies. However, it does not specify what constitutes a reclassification.

The majority states that

"the plain meaning of the statute is that reclassification may occur by assigning the work activities to a new classification or by changing the classification from one class to another. 'Reclassification' of payroll is simply the means by which the changes are accomplished." 111 Or App at 574. (Footnote omitted.)

Although I disagree with the majority's construction of ORS 737.310(12), I do agree that that statute has a plain meaning.

ORS 737.310(12) governs the assignment of rating classifications. The statute expressly and unambiguously provides that when "a workers' compensation guaranty contract is issued, the insurer shall give written notice to the insured of the rating classifications to which the insured's employees are assigned." The statute then provides that an insurer cannot reclassify employees during the policy year, unless one of three exceptions applies. Each of these exceptions relates back to the date of issuance of the policy. *See* ORS 737.310(12)(a), (b) and (c). At that time, there is no payroll to reallocate. Therefore, the only way a reclassification of employees can occur is by the assignment of a new or substitute rating classification. Because SAIF did not assign employer a new or substitute rating classification, ORS 737.310(12) does not apply.

The majority's construction is also flawed, because it conflicts with the rest of the section. ORS 737.310(10) provides:

> "The director, by rule, shall prescribe the conditions under which a division of payroll between different manual classifications is permitted for purposes of computing workers' compensation premiums."

Pursuant to that grant of authority, DIF's director promulgated OAR 836-42-060, which provides, in part:

> "(1) When there is an interchange of labor the payroll of an individual employee shall be divided and allocated among the classification(s) assigned to the employer provided verifiable payroll records of the employer disclose a specific allocation for each such individual employee.
>
> "(2) When there is an interchange of labor without verifiable records, the entire payroll of employees who interchange shall be assigned to the classification representing any part of their work which carries the highest authorized premium rate."

The term "interchange of labor"

> "means an employee or employees at different times perform duties described by two or more classifications assigned to an employer according to the classification system used by the insurer." OAR 836-42-055(4).

In sum, OAR 836-42-060 permits an employer who has been assigned more than one rating classification to allocate payroll to the different classifications, provided that it maintains verifiable records to substantiate its allocation. If the employer fails to maintain verifiable records for an employee, the insurer can reallocate the payroll for that employee to the highest authorized classification. The only time that a "reallocation" can possibly occur is after the employer has submitted its total payroll and verifiable records to its workers' compensation carrier. Therefore, an insurer's authority retroactively to adjust an employer's payroll is a necessary adjunct of the statutory and administrative scheme.

The provisions of ORS 737.310(10) indicate that the legislature intended that employers that are assigned more than one rating classification may divide their payrolls. OAR

836-42-060 effectuates that intent but precludes manipulation by enabling insurers to adjust an employer's payroll on the basis of the employer's records. Were the law otherwise, employers could allocate all payroll to the lowest assigned rating classification and then preclude the carrier from challenging that allocation by asserting the reclassification bar of ORS 737.010(12). That would defeat the purpose of the multiple rating classifications and multiple rates.

In construing a statute, we must ascertain the intent of the legislature. ORS 174.020. In pursuing that intent, we must avoid, if possible, a construction that renders part of a statutory scheme meaningless. *Burt v. Blumenauer*, 84 Or App 144, 148, 733 P2d 462, *mod* 87 Or App 263, 742 P2d 626, *rev den* 304 Or 405 (1987). ORS 737.310(10) permits the agency to determine the conditions under which a workers's compensation carrier can allocate payroll dollars among an employer's previously assigned rating classifications. However, the majority's construction of ORS 737.310(12) would preclude reallocation. Accordingly, the majority's construction renders ORS 737.310(10) meaningless.

I dissent.