Argued and submitted May 26, 1993, reversed and remanded for reconsideration
March 30, 1994

## REFORESTATION GENERAL
## CONTRACTORS, INC.,
*Petitioner,*

*v.*

## The Filings of the
## NATIONAL COUNCIL ON
## COMPENSATION INSURANCE
and SAIF Corporation,
*Respondents.*

## (90-03-030; CA A71621)
872 P2d 423

154

Gregory B. Snook and Allen, Kilmer, Yazbeck, Chenoweth & Voorhees, P.C., filed the briefs for petitioner.

David L. Runner, Assistant Attorney General, argued the cause for respondent SAIF Corporation. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Peter A. Ozanne waived appearance for respondent National Council on Compensation Insurance.

Before Deits, Presiding Judge, and Richardson, Chief Judge,* and Riggs, Judge.

_____

* Richardson, C. J., *vice* Durham, J.

154-b

DEITS, P. J.

## DEITS, P. J.

Petitioner seeks review of a Department of Insurance and Finance (DIF) amended final order requiring petitioner to pay additional workers' compensation premiums to its carrier, SAIF, for the audit period of July 1, 1987 to June 30, 1988. At issue are SAIF's reclassification of two employees for purposes of determining premium rates and the determination that three other individuals were subject workers.

During the disputed audit period, petitioner was a forest management consultant that provided reforestation and logging consultation services to landowners. For logging consultations, the type of work at issue in this audit, petitioner contracted with forest property owners to develop and administer forest management plans. Once the plans were approved, petitioner selected a logger to carry out the logging operations. Petitioner, the landowner and the logger then entered into a written contract to complete the described job. Petitioner's contractual obligations included performing certain forest management consultations, ensuring the logger's performance and receiving and disbursing funds.

During the period in dispute, petitioner employed Johnson, as vice-president, and Schuette. Much of Johnson's work was performed in an office. His duties included locating tree seedlings for purchase, approving expenditures and signing checks, and reviewing accounting results and contracts. Some of Johnson's work, however, was performed outside of the office, including travel to and from job sites, timber cruising, installing road and property boundaries, administering the logging contracts[1] and picking up log scaling tickets from loggers on the job sites. Schuette's office duties included accounting and record-keeping, performing timber cruise calculations, reviewing forest management appraisal data

---

[1] As found by the director in the amended final order:

" 'Administering' a contract involves insuring that the [logger] performed work as described in the contract. If the [logger's] work was not performed within the terms of the contract, Schuette explained the situation to Petitioner's client. Schuette and the client discussed various responses, and the client told Schuette what response Schuette should make. Schuette relayed the response to the [logger] and continued to check the [logger's] work to insure performance."

and telephoning potential clients and subcontractors. His field duties were similar to those of Johnson.

In May, 1981, petitioner applied to SAIF for workers' compensation insurance coverage and for personal election coverage for Johnson, a corporate officer. In its application, petitioner described the nature of its business as "forest management services." In a telephone conversation with a representative of SAIF regarding Johnson's application for personal election coverage, Johnson described the business as a "service organization" that "develop[ed] contractor arrangement[s] [and did] consulting work." The SAIF representative's notes from that conversation specify that "subcontractors" did the actual reforestation work. Apparently, no mention was made of logging operations. In Johnson's application for coverage, he described himself as an "administrative and field representative for contacting clients and prospective clients[;] considerable vehicle travel and service sales."

To determine an appropriate workers' compensation premium rate to be paid by an insured, SAIF uses the business classifications and rates of the National Council on Compensation Insurance (NCCI), a licensed rating organization for workers' compensation insurance. NCCI's classifications and rates have been filed with and approved by DIF, to determine the premiums that SAIF charges individual businesses. *See* OAR 836-42-020; OAR 836-42-045. NCCI's classifications are included in its publication entitled *Scopes of Basic Manual Classifications* (Scopes Manual). NCCI also publishes *Basic Manual of Workers' Compensation and Employers Liability* (Basic Manual), which includes rules that guide NCCI's interpretation and application of the classifications. *Douglas Co. Farmer's v. Natl. Council on Comp. Ins.*, 119 Or App 69, 849 P2d 1144 (1993).

Based on the information provided by petitioner, SAIF assigned Code 0124: Reforestation[2] and Code 8742: Outside Salespersons[3] to petitioner's business and Code 8742

---

[2] Petitioner never knew to whom Code 0124 applied, and that classification is not at issue in this case.

[3] In general, classifications are assigned according to the employer's business, not the various employments, occupations or operations within the business. *Mr.*

to Johnson for his personal election coverage. Petitioner did not challenge either of the classifications at that time. *See* ORS 737.505. From the inception of the policy, petitioner reported Schuette's and Johnson's payroll to SAIF under Code 8742.

During the period in dispute, Johnson filed two injury claims for separate injuries that he sustained while doing field work.[4] The information contained in the claims alerted SAIF to the possibility of changes in petitioner's business and provided the basis for an audit. As a result of the audit, SAIF transferred all payroll petitioner had reported in Code 8742 to Code 2702: Logging, and billed petitioner additional premiums for the revised classification.[5] SAIF also determined that three loggers, Blehm Logging Co. (Blehm), Forest Development Co. (Forest) and S. James Peterson Logging (Peterson), were subject workers and not independent contractors. As a result of the audit, SAIF billed petitioner for premiums owed for the loggers under Code 2702. Petitioner seeks judicial review of DIF's amended final order upholding the results of the premium audit.

■ Before reaching the merits of petitioner's challenges, we address SAIF's argument that petitioner has failed to exhaust its administrative remedies. SAIF contends that ORS 183.460 and OAR 137-03-060(2) require a party in a premium audit appeal to file exceptions to a hearings officer's proposed order. It argues that, by failing to do so, petitioner is precluded from seeking judicial review of those parts of the

---

*Lustre Car Care v. Nat'l Council on Comp. Ins.*, 99 Or App 654, 657, 783 P2d 1032 (1989). Code 8742 is one of the three standard exception classifications that exclude certain employees from the basic classification of their employer's business. It applies to outside salespersons who

> "are employees engaged in such duties away from the employer's premises. * * * In cases where outside salespersons * * * regularly perform duties in any degree of frequency at the premises of their employers, their total payroll would be assigned to the highest rated classification representing any part of their work."

[4] In December, 1987, Johnson injured his knee when he tripped while inspecting a logging operation. In February, 1988, he reinjured the knee while supervising a tree planting.

[5] During the period in dispute, the premium rate for Code 8742 was approximately $1.35 per $100 of payroll. The rate for Code 2702 averaged over $35 per $100 of payroll.

final order that were incorporated, without modification, from the proposed order.

ORS 183.460 provides:[6]

"Whenever in a contested case a majority of the officials of the agency who are to render the final order have not heard the case or considered the record, the order, if adverse to a party other than the agency itself, shall not be made until a proposed order, including findings of fact and conclusions of law, has been served upon the parties and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials who are to render the decision."

OAR 137-03-060(2) provides, in part:[7]

"When the agency serves a proposed order on the parties, the agency shall at the same time or at a later date notify the parties:

"(a)   When written exceptions must be filed to be considered by the agency; and

"(b)   When and in what form argument may be made to the officials who will render the final order."

The hearings officer issued a proposed order and complied with the required notice provisions. Petitioner did not file any exceptions to that order.

■■■   It is a general principle of administrative law that a party must exhaust available administrative remedies before seeking review of an agency's action. *Miller v. Schrunk*, 232 Or 383, 388, 375 P2d 823 (1962). A party who is dissatisfied with an agency's action may not bypass an available administrative review in favor of immediate access to the courts. *See, e.g., Ebert v. Dept. of Rev.*, 307 Or 649, 771 P2d 1018 (1989). Once a party has initiated an administrative appeal, the party may not, through its own inaction, deny the agency an

---

[6] DIF regulations, OAR 836-43-101 to OAR 836-43-270, provide for a contested case hearing for premium audit disputes. ORS 183.310(2)(a)(D). Accordingly, the proceedings are governed by ORS 183.310 to ORS 183.550.

[7] The rule applies to a premium audit appeal, pursuant to OAR 836-05-107:

"Pursuant to the provisions of ORS 183.341, the Insurance Division adopts in its entirety the Attorney General's Model Rules of Procedure under the Administrative Procedures Act as published in the Oregon Attorney General's Administrative Law Manual dated March 1990."

opportunity to conduct a meaningful and informed review of the merits of the case. *Millenaux v. Dept. of Revenue*, 293 Or 536, 541, 651 P2d 724 (1982). As explained by the Supreme Court:

> "A party does not exhaust his administrative remedies simply by stepping through the motions of the administrative process without affording the agency an opportunity to rule on the substance of the dispute." 293 Or at 541; *see also Jackson v. Dept. of Rev.*, 298 Or 633, 695 P2d 923 (1985).

SAIF argues that exceptions to a proposed order, filed pursuant to ORS 183.460, give the director an opportunity to explain or correct alleged errors in the proposed order and, therefore, constitute an administrative remedy that an adversely affected party must always exhaust before seeking judicial review of the final order. We disagree. In a case such as this, where all of the issues raised by the petitioner on appeal were before the hearings officer, the petitioner's failure to restate its argument in the form of exceptions to a proposed order does not deny the agency an opportunity to conduct a meaningful and informed review of the merits of the case. The director has before him the entire record, including the petitioner's arguments. Because the records in these cases may be fairly extensive, filing exceptions to a proposed order could be highly beneficial to a petitioner as a means of highlighting those arguments. However, we do not believe that a petitioner's failure to do so denies the director a reasonable opportunity to make a fully informed decision on the substance of the dispute. Under the circumstances here, petitioner's failure to file objections to the hearings officer's proposed order was not a failure to exhaust administrative remedies.

■　　Petitioner next argues that DIF's implicit conclusion that SAIF was authorized to assess retroactively additional premiums against petitioner is wrong as a matter of law. Petitioner contends that under the statute in effect at the time that the additional premiums were assessed, ORS 737.310(12) (*since amended by* Or Laws 1991, ch 768, § 1), an insurer may not charge additional premiums for a policy year absent proof of one of three specific circumstances. That statute provided:

"At the time a workers' compensation guaranty contract is issued, the insurer shall give written notice to the insured of the rating classifications to which the insured's employees are assigned and shall provide an adequate description of work activities in each classification. The insurer shall not bill an insured for reclassifying employees during the policy year unless:

"(a) The insured knew or should have known that the employees were misclassified;

"(b) The insured provided improper or inaccurate information concerning its operations; or

"(c) The insured's operations changed after the date information on the employees is obtained from the insured."

SAIF argues that ORS 737.310(12) is not applicable here because the guaranty contract was issued to petitioner in 1981, several years before the statute was enacted or took effect. Or Laws 1987, ch 884, § 52. SAIF contends that the written notice required by the statute is a prerequisite to application of the limitations on retroactive billing and that, because no notice was given here, the limitations do not apply.

■     In interpreting a statute, our task is to discern the intent of the legislature. We begin by examining the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). The language of the statute itself does not indicate how its requirements should be applied to then-existing guaranty contracts. However, it seems unlikely that the legislature would have intended to apply the limitations on retroactive billing to contracts for which the written notice required by the statute had not been given.[8] Because written notice was neither required nor given

---

[8] In 1991, the legislature substantially amended ORS 737.310(12) and, in that revision process, dealt with this ambiguity. The amended version retained the notice requirement but omitted that part of the statute imposing limitations on retroactive billing. Instead, the legislature authorized DIF to promulgate rules governing retroactive billing. ORS 737.310(12) and (13); *see* OAR 836-43-190. Additionally, under Oregon Laws, chapter 768, section 10, insurers were required to give written notice to any insured who, because its contract was issued before the adoption of the 1988 version of ORS 737.310(12), did not receive the notice required under that earlier version of the statute:

"If an insurer of a workers' compensation insurance policy did not give an insured the written notice required under ORS 737.310(12) (1989 Edition) prior to the effective date of this Act [August 1, 1991] because the insurer's workers' compensation guaranty contract with respect to the insured was entered prior to

to petitioner here, we do not believe that the limitations on retroactive billing in effect at the time petitioner was assessed additional premiums are applicable.[9]

■ Petitioner next argues that DIF erred in upholding SAIF's classification of Johnson and Schuette to Code 2702: Logging. The director concluded that petitioner did not prove that the classification was wrong. Petitioner argues that the classification contemplates active participation in logging operations and that, because its employees did not actively participate in logging operations, DIF erred in concluding that they could be classified under that Code.

The Scopes Manual provides that Code 2702 applies to "all types of logging and lumbering operations regardless of the size of timber being harvested." It applies to stump removals, thinning of timberland, tree and incidental brush removal in connection with housing developments, transportation by employees of logs to the mill, and construction and maintenance of logging roads. DIF's order quotes pertinent parts of the Code:

> "[Code 2702]: '[i]ncludes transportation of logs to mill; construction, operation, maintenance or extension of logging railroads. Must be used for independent contractors engaged in hauling logs in conjunction with logging and lumbering operations.'" (Quoting Basic Manual, Oregon Special Pages).

In a letter to petitioner explaining the final results of the audit, SAIF's senior audit analyst said that Code 2702 applies

---

January 1, 1988, the insurer must give the insured the notice required in this section. The notice must be in writing, must include the rating classifications to which the insured's employees are assigned and must provide an adequate description of work activities in each classification. The insurer must give the insured the notice at the first renewal of the workers' compensation insurance policy occurring on or after July 1, 1992."

The effect of these legislative changes is that, eventually, no insured party will be retroactively billed for reclassifications pursuant to OAR 836-43-190 without having first been fully informed about its rating classifications.

[9] Our conclusion is consistent with *Duron v. National Council on Comp. Ins.*, 111 Or App 571, 826 P2d 107, *mod* 113 Or App 445, 833 P2d 1289, *rev den* 314 Or 391 (1992). Although the applicability of ORS 737.310(12) was at issue in that case, the specific argument presented here was neither raised nor decided there.

to employees involved in "direct labor, supervision and driving engaged in all types of logging operations."

The director found that, among other duties, Johnson inspected tree plantings, examined planted areas, and picked up log scaling tickets from loggers on the job site during logging operations. Schuette's duties were found to include such things as administering tree cutting contracts and tree management areas and picking up log scaling tickets from loggers on the job site during logging operations. The director then concluded:

> "Johnson filed claims for injury occurring when he was actively on a reforestation and a logging job site. Johnson and Schuette were regularly on the job site when logging operations were in progress. *Therefore*, Johnson and Schuette performed duties correctly classified by SCOPES Code 2702." (Emphasis supplied.)

■ An agency is obligated to fully explain how its findings of fact lead to the decision that it makes. *Furnish v. Montavilla Lumber Co.*, 124 Or App 622, 863 P2d 524 (1993). The problem here is that DIF fails to explain why the factual findings lead to the conclusion that the duties performed by the employees were properly classified as "logging." *See Armstrong v. Asten-Hill Co.*, 90 Or App 200, 205, 752 P2d 312 (1988). The language of the Scopes Manual, the Oregon Special Pages of the Basic Manual and SAIF"s analyst's description of the classification suggest that Code 2702 applies only to individuals actively engaged in logging operations. DIF found that the employees were, at times, on the job site during logging operations, but it did not find that they were actively participating in logging operations. If it can be done in a manner that is consistent with the applicable rules and statutes, DIF may be able to "interpret" active involvement to include presence on a job site while logging operations are in progress. *O'Leary v. Valley View Cutting*, 107 Or App 103, 106, 810 P2d 1324 (1991). However, DIF must articulate that conclusion and provide a rational explanation for its holding that will facilitate meaningful judicial review. *Home Plate, Inc. v. OLCC*, 20 Or App 188, 190, 530 P2d 862 (1975).

SAIF argues that the reclassification is correct because it applies to the business as a whole. Again, it is

unclear how DIF's findings could lead to the conclusion that petitioner's business was logging. The director found that "[p]etitioner is a forest management consultant which furnished reforestation and logging consultation services to landowners." If, on remand, that finding is to serve as a basis to conclude that the classification is correct, the agency must provide the rationale for its conclusion.

■ Petitioner next argues that, even if some of Johnson's payroll was subject to reclassification, the director erred in upholding SAIF's decision to allocate Johnson's entire payroll to the classification for the duties carrying the highest premium rate.[10] Because this issue may arise on reconsideration by DIF, we will address it here. ORS 737.310(10) requires the director to prescribe by rule the conditions under which an employer "is permitted" to divide payroll among classifications. Pursuant to that authority, OAR 836-42-060 provides, in part:

> "(1) When there is an interchange of labor the payroll of an individual employee shall be divided and allocated among the classification(s) assigned to the employer provided verifiable payroll records of the employer disclose a specific allocation for each such individual employee.

> "(2) When there is an interchange of labor without verifiable records, the entire payroll of employees who interchange shall be assigned to the classification representing any part of their work which carries the highest authorized premium rate."

"Interchange of labor" means

> "an employee or employees at different times perform duties described by two or more classifications *assigned to an employer* according to the classification system used by the insurer." OAR 836-42-055(4). (Emphasis supplied.)

Petitioner argues that because SAIF assigned to Johnson only one classification, Johnson could not have performed an "interchange of labor." Consequently, petitioner asserts, DIF erred in applying OAR 836-42-060(2) to assign Johnson's entire payroll to a subsequently assigned classification. We agree. Under the language of the pertinent

---

[10] Petitioner does not challenge the assignment of Schuette's entire payroll to a higher premium classification.

rules, unless more than one classification had been assigned to Johnson, there could be no interchange of labor. Without an interchange of labor, no issue arises as to whether the employee's payroll should be either divided among classifications or assigned in full to a higher authorized classification.

■   SAIF argues that even if DIF erred in applying the quoted rules, it correctly applied Rule IV-E-2 of the NCCI Basic Manual (Oregon Special Pages), which allows the division of payroll among classifications that have not been assigned to the employer. The rule quoted by DIF provides, in part:

> "When there is an interchange [between operations subject to more than one classification], the remuneration of an individual may be assigned to any such classifications *which may be properly assigned* to the employer * * * and original payroll records of the employer disclose a specific allocation for each individual employee." (Emphasis supplied.)

SAIF reads the Basic Manual rule to mean that an employee's payroll may be allocated to a classification that was not originally assigned to the employer. That is a plausible reading of the rule. It is, however, inconsistent with the language of the administrative rules adopted by DIF. OAR 836-42-050 to OAR 836-42-060. We understand that the Basic Manual rules were part of SAIF's rating system that was filed with and approved by DIF. However, it does not appear that DIF has adopted the Basic Manual as administrative rules under the APA. ORS 183.310 to ORS 183.550. Accordingly, to the extent that the administrative rules and the Basic Manual rules are inconsistent, the administrative rules must prevail.

We conclude that Johnson did not qualify for permissible payroll division, as defined by the governing administrative rules and, therefore, DIF cannot rely on those rules to uphold SAIF's reassignment of Johnson's entire payroll to one classification. Our holding does not mean that it is impermissible to transfer the entire payroll to a higher rated classification if the director finds on remand that a Code other than 8742 covers all of Johnson's duties.

■   Petitioner also assigns error to the director's conclusion that Blehm, Forest and Peterson were employees for purposes of workers' compensation insurance premiums.

The question of employee or independent contractor status is one of law, if the basic facts are not in dispute. *Woody v. Waibel*, 276 Or 189, 192 n 3, 554 P2d 492 (1976). Where there is conflicting evidence about the facts of the relationship, we review DIF's factual findings for substantial evidence. ORS 183.482(8)(c).

During the audit period, petitioner entered into three contracts, each with a different landowner and a different logger. Although the contracts were tailored to the particular jobs, they contained similar provisions:

1. Each contract provided that the logger performed work under the contract as an independent contractor;

2. Each contract referred to the employees of the loggers;

3. Each contract was for performance of a particular job and specified a particular result;

4. Each contract included a contract completion date and specified that time was of the essence;

5. Each contract provided that petitioner would mark the logging boundaries or designate the timber to be cut;

6. Each contract contained a provision that the petitioner acted on behalf of the client in administration and supervision of the agreement;

7. Each contract contained a payment reservation clause whereby petitioner, on the client's behalf, could reserve logging payments until the logger fully complied with the terms of the contract. The reserved funds were to cover any damages sustained by the client from the logger's performance.

In the course of performing their contracts, Blehm and Forest each hired and paid truckers to transport the logs to the mill. Peterson entered into contracts with his sons to assist him with the job for petitioner. During the audit period, each of the loggers entered into contracts with other entities.

■    Petitioner first relies on *Little Donkey Enterprises, Inc. v. SAIF*, 107 Or App 400, 812 P2d 25 (1991), to argue that each logger was a sole proprietor and, as such, ORS 656.027(7) (*since amended by* Or Laws 1989, ch 762, § 4)[11] exempts them from the workers' compensation statutes, regardless of whether they qualified as independent contractors. That decision, however, was overruled in *Little Donkey Enterprises, Inc. v. SAIF*, 118 Or App 54, 57-58, 845 P2d 1298, *mod* 121 Or App 643, 856 P2d 323 (1993), where we held that while a sole proprietor is barred from workers' compensation coverage for acts performed in that capacity, he or she is not barred when functioning as an employee of another business. DIF's refusal to exempt the loggers on that basis was not error.

■    Petitioner next argues that DIF erroneously relied on the "relative nature of the work" test to conclude that the three loggers were employees. Under *former* ORS 656.005(27) (renumbered ORS 656.005(28) in 1990), a worker or subject employee is one who is "subject to the direction and control of an employer." Under ORS 656.005(13), an employer is one who has "the right to direct and control the services of any person." The principal factors to consider in applying the right to control test[12] are:

> "(1) direct evidence of the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire." *Castle Homes, Inc. v. Whaite*, 95 Or App 269, 272, 769 P2d 215 (1989).

Where the evidence is insufficient to support a finding under the right to control test, the nature of the work test is a rational method for making a finding as to an individual's status.[13] *See Premsingh & Assoc. v. Natl. Council on Comp.*

---

[11] At the relevant time, ORS 656.027 provided, in part:

"All workers are subject to ORS 656.001 to 656.794 except those nonsubject workers described in the following subsections:

"* * * * *

"(7) Sole proprietors."

[12] Because the facts of this case arose before October 1989, we do not consider the effects of the 1989 statutory amendment relating to independent contractors. *See* ORS 656.005(29) and ORS 701.025.

[13] The nature of the work test takes into account

"the character of the claimant's work or business—how skilled it is, how much a

*Ins.*, 111 Or App 624, 627, 826 P2d 120, *rev den* 313 Or 300 (1992). Here, DIF applied the right to control test to each of the three loggers and, in each case, concluded that the test was inconclusive. It then applied the relative nature of the work test and concluded that the three loggers were employees for the purposes of workers' compensation premium assessment.

▉ In applying the right to control test, DIF first evaluated the record for direct evidence of control. It identified several facts indicating independent contractor status, including the parties' express intent, the payment reservation clauses and the provisions for the performance of specific jobs, the fact that the loggers worked for other logging companies during the period in dispute and that the loggers retained the right to hire assistants. The parties do not dispute those findings. DIF concluded, however, that the control factor was inconclusive because other evidence was indicative of employee status.

▉ DIF determined that petitioner's specification of the contract completion time, marking of the land boundaries or the timber to be cut and supervision of the contracts are direct evidence of petitioner's right to control the loggers. Although substantial evidence supports the factual findings, we disagree with DIF's conclusion as a matter of law. Any independent contractor is subject to the control of the hiring party by virtue of the fact that the contractor is directed to accomplish a desired result. *Sodorback v. Townsend*, 57 Or App 366, 369, 644 P2d 640, *rev den* 293 Or 394 (1982). However, the right to control test refers to the right to control the manner and means of accomplishing the result, not the right to control the result itself. *Great American Ins. v. General Ins.*, 257 Or 62, 67, 475 P2d 415 (1970). As explained by Larson:

> "An owner, who wants to get work done without becoming an employer, is entitled to as much control of the details of

---

separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on — and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuous services as distinguished from contracting for the completion of a particular job." 1B Larson, *Workers' Compensation Law* 8-27, § 43.52 (1991).

the work as is necessary to ensure that he gets the end result from the contractor that he bargained for." 1B Larson, *Workers' Compensation Law* 8-66, § 44.21 (1991); *see Marcum v. SAIF*, 29 Or App 843, 846, 565 P2d 399 (1977).

Accordingly, a hiring party's control over the quality or the description of the work, as opposed to the person performing it, will not automatically convert an independent contractor relationship into one of employment. 1B Larson, *supra*, at 8-75, § 44.21. Here, petitioner's specification of a completion date and marking of the physical boundaries for each job are part of the end result for which petitioner contracted and are not necessarily indicative of employee status. Similarly, petitioner's right to supervise the agreements goes to the right to ensure that the ultimate goal of the contract is accomplished.[14]

The facts of this case are distinguishable from those in which the hiring party's control was found to extend beyond the details of the desired result. In *Great American Ins. v. General Ins., supra,* the Supreme Court found that the employer had the right to control all phases of the desired construction project, including the type of equipment and when and where it was to be used, as well as the details of the method of performance. 257 Or at 67-68. Similarly, in *Nichols v. Baggarley*, 79 Or App 505, 509, 719 P2d 914 (1986), we found an employment relationship to exist where the employer scheduled when the hired carpenter would work and told him what, where and how to perform his work. In contrast, petitioner here did not control when the loggers would begin performance or designate the hours they would work. Petitioner retained no control over the methods employed by the loggers or the manner in which the loggers performed their duties. Rather, the contracts specified only that the loggers use "appropriate equipment" and perform

---

[14] In its discussion of Forest's status, DIF found that "the contract stated that petitioner supervised [Forest's] performance." We find no evidence in the record to support that finding. The three contracts provided that petitioner was acting "on behalf of Owner in administration and supervision of the contract." DIF quoted this provision and explained what it meant, *see* note 1, *supra*, but thereafter referred to petitioner's supervision of the loggers' *performance*. Because DIF did not make any specific finding that petitioner's right to administer and supervise the contract included the right to supervise the manner and methods of the loggers' performance, we assume DIF's references to "supervision" are to petitioner's right to ensure that the work being performed was according to the terms of the contract.

the designated work in "accordance with good forestry practices." We conclude that DIF erred in holding that the record contained direct evidence of petitioner's right to control the means and methods of the loggers' performance.[15]

As to the second and third factors, the parties do not dispute that Blehm and Forest were paid on a flat bid basis and Peterson was paid by the thousand board feet. They agree that all three loggers furnished and repaired their own equipment at their own expense. DIF was correct in concluding that the method of payment and the furnishing of equipment are indicative of independent contractor status.

As to the final factor, the right to fire, petitioner offered no direct evidence on the issue. We reject petitioner's argument that the right to fire factor is incongruous with the existence of a contract. The written contract in *Woody v. Waibel, supra,* 276 Or at 192 n 2, for example, expressly provided that either party could terminate the agreement without liability. However, although we recognize that petitioner has the ultimate burden of proof as to the loggers' status, we find nothing in the record to suggest that petitioner retained an unqualified right to terminate the contracts absent bona fide reasons of dissatisfaction. *See Henn v. SAIF,* 60 Or App 587, 593, 654 P2d 1129, *rev den* 294 Or 536 (1983); 1B Larson, *supra,* at 8-191 to 8-192, § 44.35(g). We conclude that this factor is indicative of independent contractor status.

Based on our evaluation of the above factors, we conclude as a matter of law that, under the right to control test, the three loggers performed as independent contractors. Because the right to control test is conclusive on the issue, it is unnecessary to apply the relative nature of the work test. *Woody v. Waibel, supra,* 276 Or at 189.

Reversed and remanded for reconsideration of the issues of reclassification and the allocation of Johnson's payroll; reversed as to premiums charged for Blehm Logging Co., Forest Development Co. and S. James Peterson Logging.

---

. [15] DIF also concluded that the loggers' failure to be certified by the Oregon Employment Division constituted direct evidence of petitioner's right to control. We are unable to find anything in the record to support this factual finding. However, even if we were to accept a finding that the loggers were not certified, we do not see how this constitutes *direct* evidence of petitioner's right to control the loggers.