Argued and submitted January 24, affirmed June 22, 1994

Cindy Lou PEASE,
dba Evans Farms,
*Petitioner,*

*v.*

The Filings of the
NATIONAL COUNCIL ON
COMPENSATION INSURANCE
and SAIF Corporation,
*Respondents.*

(91-07-003; CA A78347)

876 P2d 839

J. Michael Alexander argued the cause for petitioner. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann.

Peter A. Ozanne argued the cause for respondent National Council on Compensation Insurance. With him on the brief was Schwabe, Williamson & Wyatt.

James W. Moller, Special Assistant Attorney General, argued the cause for respondent SAIF Corporation. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and De Muniz, Judges.

RIGGS, J.

**RIGGS, J.**

Employer seeks review of a Department of Insurance and Finance (DIF)[1] final order requiring employer to pay additional workers' compensation premiums to its insurer, SAIF. Employer challenges DIF's determination of what constitutes verifiable records, DIF's classification of certain employees as general nursery employees and DIF's classification of certain individuals as employees rather than independent contractors. We affirm.

Employer operates Evans Farm, a 180-acre ornamental plant nursery and retail garden store. Evans Farm has four locations. "Farm one" serves as employer's headquarters and includes employer's residence, as well as a converted barn with office space and a retail garden center. The garden center sells seeds, statuary, chemicals, garden supplies and plants that have been grown both at Evans Farm and elsewhere. The three other locations are all within a few miles of farm one and are used to grow nursery stock. Employer sells most of the nursery stock wholesale and some at her garden center.

Employer uses three types of workers that are involved in this review. First, employer employs a number of individuals to do a variety of tasks, including hand-hoeing. Very few of the hoers speak English, and most of them cannot read or write either English or their native language.[2] These employees turn in weekly timecards indicating the tasks done and the amount of time spent at each task. The timecards are filled out in Spanish, using Spanish terms, such as "azadon" or "zacate," to indicate hoeing. The cards are supposed to be filled out by the employee during the course of a day, but they are often filled out by other employees at unknown times.

Employer also employs a number of clerks for the retail garden store. They sell retail garden products, including plants grown on Evans Farm, to the public. Although employer asserts that the garden store is a separate entity,

---

[1] That department has been renamed the Department of Consumer and Business Services.

[2] Some of the hoers are native Spanish speakers and some speak other languages.

she produced no evidence that she kept the books and records separate from the books and records of the entire business.

Finally, employer uses diggers to harvest plants from the ground and to prepare the plants for shipping. Employer leads the diggers to a field where other employees have marked off a block of plants to be dug. Employer tells the diggers the time frame in which the plants must be dug and negotiates a price per plant. The diggers then dig the trees and wrap the soil ball with burlap and twine. The soil ball is crucial to the plants' survival, and employer requires the diggers to meet certain standards of size and firmness in the plants' soil balls. Employer inspects the soil balls and either makes the digger comply with the standards or terminates the digger. The diggers are paid in round numbers every two weeks.

SAIF conducted a premium audit for the period January 1, 1990, through June 7, 1990, pursuant to ORS 737.318. Following the audit, employer appealed to DIF, ORS 737.505(3), and, after a hearing, DIF issued the final order of which employer seeks review. The order concluded that, as to the hoers, employer's records were not verifiable because they were kept in Spanish, no translation was provided to assist the auditors, and it was not clear when and by whom the timecards were filled in. Because the records were not verifiable, employer was not allowed to allocate the payroll of her employees between the general business code and the less expensive code for hand-hoeing as allowed by ORS 737.310-(10) and OAR 836-42-060. The order also classified the retail sales clerks payroll under Code 0005, Farm: nursery employees and drivers, instead of the code that employer requested, Code 8001, Store: florists and drivers.[3] Finally, the order concluded that because the diggers were employees, not independent contractors, employer owes premiums for the diggers' payroll during the audit period. We review for errors of law and substantial evidence. ORS 183.482(8)(a); ORS 183.482(8)(c).

---

[3] The codes at issue are determined by the National Council on Compensation Insurance (NCCI). NCCI is a licensed rating organization for workers' compensation insurance that classifies businesses and sets rates. The classifications and rates are filed with and approved by DIF and used by the insurer to determine the premiums that it charges individual businesses. *See* OAR 836-42-02; OAR 836-42-045.

Employer first challenges whether DIF had subject matter jurisdiction to hear this dispute, whether the hearings process deprived her of her constitutional right to trial by jury and whether the hearings officer correctly assigned the burden of proof to her. However, employer concedes that, in *Salem Decorating v. Natl. Council on Comp. Ins.*, 116 Or App 166, 840 P2d 739 (1992) *rev den* 315 Or 643 (1993), we decided those issues adversely to her position. She suggests no reason why those issues should be decided any differently here, and we conclude that DIF did not err in these respects.

■ Employer next assigns error to DIF's conclusion that the records she kept were not verifiable. ORS 737.310(10) authorizes DIF to issue rules prescribing the conditions under which an employer can divide payroll between different classification codes.[4] OAR 836-42-060(1) provides that one of those conditions is that an employer must provide "verifiable payroll records" disclosing the allocation of time spent at the different tasks. Neither the statutes nor the regulations set forth the requirements of "verifiable" payroll records. In the final order, DIF defined verifiable to mean

"that the accuracy of the insured's classification and job description technique must be capable of independent confirmation by an insurer using records that are maintained by the employer and available to the insurer at the time of the audit."

DIF then found that, because employer's records were kept in Spanish, were not translated to assist the auditors and did not indicate when and by whom the timecards were filled in, the records were not verifiable. Employer is correct that records kept in Spanish are not necessarily unverifiable. However, DIF also found that employer's timecards "were completed by unknown persons some period of time after the time of work performance." DIF defined verifiability to include accuracy, and employer does not challenge that definition. DIF's interpretation of its own rule is entitled to deference and we accept it. *See Booth v. Tektronix*, 312 Or 463, 473, 823 P2d 402 (1991); *Branscomb v. LCDC*, 297 Or 142, 145, 681 P2d

---

[4] ORS 737.310(10) provides:

"The director, by rule, shall prescribe the conditions under which a division of payroll between different manual classifications is permitted for purposes of computing workers' compensation premiums."

124 (1984); *Springfield Education Assn. v. School Dist.*, 290 Or 217, 221, 621 P2d 547 (1984). Therefore, the records, to be verifiable, must also be accurate. The lack of contemporaneous timecards and the uncertainty as to who filled them out led DIF to conclude that the timecards could not be audited for accuracy and, thus, were unverifiable. DIF's conclusion that employer's records were unverifiable was not error.

■ Employer next assigns error to DIF's assignment of Code 0005 to the clerks in the retail garden center. She contends that those employees should be assigned to Code 8001 for "store: florist and drivers." However, the basic rating system classifies payrolls by the employer's business, not by the various employments, occupations or operations within that business.[5] *Mr. Lustre Car Care v. Nat'l Council on Comp Ins.*, 99 Or App 654, 657, 783 P2d 1032 (1989). Code 0005 applies to "insureds engaged primarily in the propagation of trees, shrubs, plants and flowers for retail and wholesale sale." Employer concedes that this "may generally describe much of the insured's operation," but she contends that the retail garden center is a separate entity and should be classified as such. Rule IV-D-4 in the Basic Manual of Workers' Compensation and Employer's Liability[6] allows a business to have a second classification code for a separate entity, provided certain qualifications are met. The second business must be conducted as a separate undertaking, separate payrolls must be maintained and the businesses must be physically separated with no interchange of labor. The hearings officer found that "[employer's] four farms are still one

---

[5] That is not inconsistent with the issue discussed above involving the hoers. A business will be assigned one code, which describes its general business. In most cases, all of an employer's employees will be classified according to that one code. However, the NCCI rating system also includes a few special codes that are applicable across different employers' general business codes. One of those codes is 0008 for hand-hoeing. If a business has employees who perform those tasks, and it can meet the requirements, such as maintaining verifiable records, then the employer can allocate a particular employee's payroll to the general business code as well as the specific task code. If no employee performs those tasks, or if the employer does not meet the requirements, then the entire payroll is assigned to the general business code.

[6] The Basic Manual of Workers' Compensation and Employers' Liability includes rules that guide NCCI's interpretation and application of the classifications. *Douglas Co. Farmer's v. Natl Council on Comp. Ins.*, 119 Or App 69, 71, 849 P2d 1144 (1993).

nursery location" and that "[employer's] retail garden sales are not a secondary business, but an incident of its primary business." In addition, although employer testified that she maintained separate books and payroll, she did not place those records in evidence, and the hearings officer found her testimony not credible. Accordingly, the final order correctly determined that employer was not entitled to have her retail garden center employees assigned to a separate code.

■ Employer next assigns error to the conclusion that the diggers were employees for purposes of worker's compensation premiums. She does not challenge the facts found by DIF, but argues, instead, that DIF misapplied the "right to control" test. The question of employee or independent contractor status is one of law if the basic facts are not in dispute. *Woody v. Waibel*, 276 Or 189, 192 n 3, 554 P2d 492 (1976); *Reforestation General v. Natl. Council on Comp. Ins.*, 127 Or App 153, 165, 872 P2d 423 (1994). The Supreme Court recently held that the judicially created "right to control" test is the starting point for determining whether an individual is a "worker" under ORS 656.005(28) and thus subject to the workers' compensation laws. *S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 318 Or 614, 630, 872 P2d 1 (1994). That test has four primary factors: (1) direct evidence of the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. *Castle Homes, Inc. v. Whaite*, 95 Or App 269, 272, 769 P2d 215 (1989).

Employer first argues that DIF incorrectly determined that there was direct evidence of the right to control the diggers' work. She argues that she had "no control over their hours, or even the particular days they might work." Although employer may be correct that she did not control the diggers' hours and days, that is not dispositive. The right to control the details of the method of performance is another substantial aspect of this factor. *See S-W Floor Cover Shop v. Natl Council on Comp. Ins., supra*, 318 Or at 622. DIF found:

> "*Direct evidence of the right to, or exercise of, control*: * * * [employer] instructed the diggers what plants to dig and when. [Employer] required that the diggers create the soil ball in conformance with OAN [Oregon Association

of Nurserymen] standards. [Employer] inspected the diggers' work. If the diggers were not at work, [employer] replaced them. If a digger's work failed to meet industry standard, [employer] terminated the digger's employment immediately. If the work failed to meet the industry standard but was capable of correction, [employer] told the digger to correct the work. These factors indicate an employer/employee relationship."

Employer controlled the details of how the work was performed, she set the standards of how the soil ball was to be dug, she inspected the soil balls, she determined which plants were going to be worked on and she told the diggers when they needed to be finished. DIF correctly determined that this factor indicated an employer/employee relationship.

Employer next argues that DIF erroneously found that the method of payment was consistent with employee status and not independent contractor status. However, DIF actually found that this factor supported both conclusions, and thus was inconclusive. In the final order, DIF found:

"*The method of payment*: [Employer] paid the diggers every two weeks. The payments were in round numbers, such as $700. Each digger received an even amount of money, when [employer] allegedly paid them according to the number of harvested trees. This is more indicative of payments for continuing services than payment on a piece-work basis. Further, [employer] set the rates with the group, for the group, and within the guidelines of the OAN. This method of price setting is not negotiation by two parties of equal bargaining positions. These factors are indicative of an employer/employee status.

"[Employer] used a federal tax reporting form 1099 to report its payments to the diggers. This factor indicates an independent contractor relationship."

DIF correctly found that the method of payment factor is inconclusive in this case.

Employer next argues that an analysis of the right to fire supports the conclusion that the diggers were independent contractors. Regardless of whether DIF found that the right to fire supported a conclusion that the diggers were independent contractors or employees, the other factors of the right to control test indicate that this test is inconclusive.

When the right to control test is inconclusive, DIF may proceed to the "relative nature of the work" test to determine whether an employment relationship exists. *S-W Floor Cover Shop v. Natl. Council on Comp. Ins., supra*, 318 Or at 622 n 6; *Henn v. SAIF*, 60 Or App 587, 593, 654 P2d 1129 (1982), *rev den* 294 Or 536 (1983). DIF properly did so and found that, under this test, the diggers were employees. The relative nature of the work test involves an examination of

> "the character of the claimant's work or business — how skilled it is, how much a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and * * * its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job." *Woody v. Waibel, supra*, 276 Or at 195 (quoting 1A Larson's *Workmen's Compensation Law* § 43.51 (1973)).

DIF found that the diggers' work was seasonal, but was a regular part of employer's business. DIF also found that the diggers' work was necessary for employer to pursue her business, that the same diggers worked for her from year to year and that she hired some of the diggers as employees after the digging season ended. We agree with DIF's conclusion that under the relative nature of the work test, the diggers were employees and not independent contractors.

Affirmed.