On respondent SAIF Corporation's motion for reconsideration filed April 13, reconsideration allowed; opinion (127 Or App 153, 872 P2d 423) adhered to October 19, 1994

# REFORESTATION GENERAL CONTRACTORS, INC.,
*Petitioner,*

*v.*

## The Filings of the
## NATIONAL COUNCIL ON
## COMPENSATION INSURANCE
and SAIF Corporation,
*Respondents.*

(90-03-030; CA A71621)

883 P2d 865

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and David L. Runner, Assistant Attorney General, for motion.

Before Deits, Presiding Judge, and Richardson, Chief Judge,* and Riggs, Judge.

DEITS, P. J.

---

* Richardson, C. J., *vice* Durham, J.

## DEITS, P. J.

Respondent SAIF moves this court to reconsider a portion of our decision in this case. 127 Or App 153, 872 P2d 423 (1994). Specifically, SAIF requests that we modify the part of the opinion that concludes that unless an employee performed duties described by two or more classifications previously assigned to the employer, the employee did not perform an "interchange of labor" and, thus, DIF's[1] rules regarding the allocation of payroll among classifications do not apply. OAR 836-42-055(4); OAR 836-42-060(1). We allow reconsideration and adhere to our opinion.

SAIF asserts that we erred by usurping DIF's responsibility to interpret its own rules. The disputed rules are OAR 836-42-060(1) and OAR 836-42-055(4). OAR 836-42-060 provides, in part:

"(1) When there is an interchange of labor the payroll of an individual employee shall be divided and allocated among the classification(s) assigned to the employer provided verifiable payroll records of the employer disclose a specific allocation for each such individual employee.

"(2) When there is an interchange of labor without verifiable records, the entire payroll of employees who interchange shall be assigned to the classification representing any part of their work which carries the highest authorized premium rate."

"Interchange of labor" means

"an employee or employees at different times perform duties described by two or more classifications *assigned to an employer* according to the classification system used by the insurer." OAR 836-42-055(4). (Emphasis supplied.)

In our opinion, we read the pertinent language of those rules to mean that a classification must have been assigned to an employer before the employee performs the duties in order for there to be an interchange of labor. Our reading was based on the plain language of the rules, which provides that an "interchange of labor" occurs when an employee performs duties described by two or more classifications assigned to an employer. The use of the term "assigned"

---

[1] DIF is now known as the Department of Consumer and Business Services.

indicated to us that the classifications must have been made before the time that the duties were performed.

SAIF now argues that DIF would interpret the term differently than we did; that DIF's rules do not specify when a classification must be assigned in order for there to be an "interchange of labor" allowing a division of payroll between classifications and that even if a classification is assigned to an employer after the duties have been performed, the employee's entire payroll may be allocated to the new classification, if no verifiable records exist.

■ There are a number of problems with SAIF's argument. First, this is not the argument that SAIF made on judicial review. Petitioner argued on review that because SAIF had assigned to it only one classification, its employee could not have performed an interchange of labor. Accordingly, petitioner contended that SAIF could not allocate the employee's entire payroll to the new classification on finding that petitioner failed to maintain verifiable payroll records documenting the time that the employee spent performing duties described by the then-unknown classification. SAIF responded:

> "The short answer to this contention is that, even assuming that the administrative rule does not apply, the other rule cited by DIF does apply and mandates the same result."

SAIF then cited NCCI Basic Manual Rule IV-E-2, Oregon Special Pages, which says that an employer can allocate payroll "to any such classifications *which may be properly assigned to the employer.*" (Emphasis SAIF's.) SAIF concluded:

> "Under the Basic Manual rule, the fact that the classification to which payroll is ultimately allocated was not a classification originally assigned to the employer is immaterial."

In our earlier opinion, we held that, even if we were to interpret the Basic Manual rule as suggested by SAIF, the plain language of the administrative rules would prevail over an inconsistent, non-APA rule. We adhere to that conclusion.

■ The other problem with SAIF's argument on reconsideration is that, even if it had been presented to us earlier, it is not clear from DIF's order whether DIF applied the administrative rules, let alone whether it clearly interpreted the

rules in the manner that SAIF now contends is appropriate. The argument of a party is not the equivalent of an interpretation by an agency. *See West v. Clackamas County*, 116 Or App 89, 840 P2d 1354 (1992). Although DIF cited OAR 836-42-060(1), its analysis and conclusion appear to be based solely on the NCCI rule. After quoting the relevant NCCI rule, DIF said:

> "Employers whose employees perform two or more job duties *described by a separate SCOPES code classification* may allocate their hours in each classification if the employer maintains verifiable payroll records." (Emphasis supplied.)

That comment suggests that DIF was interpreting the NCCI rule as SAIF had asserted: Payroll may be divided when an employee performs duties described by two or more classifications that *are or could be* assigned to an employer. However, such an interpretation is inconsistent with the plain language of DIF's adopted administrative rules and is inconsistent with SAIF's current argument.

Further, in the course of its analysis, DIF addressed whether petitioner maintained verifiable records and explained:

> "The purpose behind the requirement that a payroll record be verifiable is to enable a third party, such as an insurer, to determine *if an employer is correctly reporting a divided payroll by classification.*" (Emphasis supplied.)

That comment suggests that DIF interprets NCCI's rule and/or its own rules to apply to situations where an employer is reporting a divided payroll among known classifications. Such a reading is consistent with the plain language of the administrative rule and is at odds with SAIF's current argument.

■ In any event, even if SAIF had made this argument before us on review and DIF had clearly interpreted the administrative rules in the manner that SAIF now asserts, as we concluded in our earlier opinion, such an interpretation would be inconsistent with the wording of the rules, considered in their context. *See Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994).

Reconsideration allowed; opinion adhered to.