Argued and submitted February 28, affirmed July 27, 1994

# BOB WILKES FALLING, INC.,
*Respondent,*

*v.*

## The Filings of the
## NATIONAL COUNCIL ON
## COMPENSATION INSURANCE,
*Respondent below,*

*and*

## SAIF CORPORATION,
*Petitioner.*

(88-10-018; CA A77187)

878 P2d 1136

David L. Runner, Assistant Attorney General, argued the cause for petitioner. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Martha C. Evans argued the cause for respondent. With her on the brief was Evans Harrison Pease.

Before Deits, Presiding Judge, Richardson, Chief Judge, and Riggs, Judge.

RICHARDSON, C. J.

## RICHARDSON, C. J.

SAIF Corporation seeks review of an order of the Department of Insurance and Finance (DIF)[1] that disallowed premiums for workers' compensation coverage that SAIF charged to Bob Wilkes Falling, Inc. (Wilkes) for two timber cutters associated with Wilkes.[2] SAIF argues that DIF erred in concluding that the timber cutters were nonsubject workers who were exempt from workers' compensation coverage by Wilkes under ORS 656.027(7).[3] Because we conclude that the timber cutters were not "workers" and, therefore, not subject to workers' compensation coverage, we affirm.

The basic facts are undisputed. Wilkes is an Oregon corporation that contracts with lumber mills, property owners and private individuals to fell trees and cut them into log lengths. During the premium audit periods in question,[4] Wilkes asked Northwest Timber (NWT) and Lake Price Logging (LPL) to bid on cutting certain units of one of Wilkes' projects, the "Charlotte Sale." NWT and LPL were each operated by one individual. Wilkes accompanied NWT and LPL to the units and pointed out the boundaries of the areas to be cut. NWT and LPL negotiated a cutting price with Wilkes and entered into written contracts.

The contracts incorporated the terms of Wilkes' agreement with the mill, including the rate of pay, date of completion and specification of log lengths. The contracts specified that NWT and LPL were independent contractors and that they had "full control and direction of work to be performed." The contracts did not discuss termination rights. The agreements required that NWT and LPL perform

---

[1] DIF is now known as the Department of Consumer and Business Services.

[2] This issue was originally before us in *Bob Wilkes Falling v. National Council on Comp. Ins.*, 108 Or App 453, 816 P2d 1172, *rev den* 312 Or 527 (1991). We remanded the case to DIF for reconsideration of the issue in the light of *Little Donkey Enterprises, Inc. v. SAIF*, 107 Or App 400, 812 P2d 25 (1991). DIF subsequently issued and withdrew several orders. SAIF seeks review of DIF's "Revised Order Upon Reconsideration," dated May 10, 1993, which supplements and reaffirms its "Order on Remand," dated May 1, 1992.

[3] The 1987 version of ORS 656.027 is applicable to this case. That statute has been amended several times and, in particular, subsection (7) was amended by Oregon Laws 1989, chapter 762, section 4.

[4] SAIF conducted the audit for two periods: October 1, 1986, through September 30, 1987, and October 1, 1987, through September 30, 1988.

the job in a "good and workmanlike manner," and DIF found that Wilkes was entitled to withhold payment if the job was not properly completed. There were arbitration clauses to resolve disputes arising under the contracts and attorney fees provisions that allowed costs and attorney fees to the non-defaulting party in a proceeding to enforce the contract.

As per their contracts, NWT and LPL each worked according to their own methods, supplied their own equipment and set their own hours. They were paid by the thousand board feet of timber cut, on the same basis as Wilkes was paid by the mill, and were allowed to take draws against future payment. NWT and LPL worked among Wilkes' employees who also felled and cut timber. Wilkes' employees were paid on a different basis than NWT and LPL. The Charlotte Sale was the only job NWT and LPL performed for Wilkes.

On the basis of these facts, DIF concluded that NWT and LPL were "workers, exempt as sole proprietors and independent contractors" under ORS 656.027(7). SAIF contends that DIF's conclusion that NWT and LPL were workers is inconsistent with its determination that they were exempt as sole proprietors under that statute. Wilkes responds that DIF correctly determined that NWT and LPL were exempt as sole proprietors.[5] At issue is the correct application of ORS 656.027(7).

At the relevant time, ORS 656.027(7) provided:

> "All workers are subject to ORS 656.001 to 656.794 except those nonsubject workers described in the following subsections:
>
> "* * * * *
>
> "(7)   Sole proprietors."

We begin by determining whether NWT and LPL were "workers." *S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 318 Or 614, 630, 872 P2d 1 (1994).[6] Because the parties

_____

[5] Wilkes also argues that we lack jurisdiction. SAIF filed a timely petition for review from DIF's properly filed "Revised Order Upon Reconsideration." We have jurisdiction pursuant to ORS 656.704(2) and ORS 183.482(1).

[6] Although *S-W Floor* construed the 1989 version of ORS 656.027, the basic analysis requiring a determination of "worker" status before reaching the issue of "nonsubject worker" status applies to the pre-1989 version of ORS 656.027. *Oregon*

do not dispute the basic facts, the question of worker status is one of law. *Woody v. Waibel*, 276 Or 189, 192 n 3, 554 P2d 492 (1976); *Cy Investment, Inc. v. Natl. Council on Comp. Ins.*, 128 Or App 579, 583, 876 P2d 805 (1994). *Former* ORS 656.005(27)[7] defined "worker" as

> "any person * * * who engages to furnish services for a remuneration, subject to the direction and control of an employer."

In analyzing whether NWT and LPL were under the "direction and control" of Wilkes, we apply the "right to control" test. If that test proves to be inconclusive, we apply the "relative nature of the work" test. *Cy Investment, Inc. v. Natl. Council on Comp. Ins., supra*; *see also Woody v. Waibel, supra*.

The principal factors in the right to control test are:

> "(1) direct evidence of the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire." *Castle Homes, Inc. v. Whaite*, 95 Or App 269, 272, 769 P2d 215 (1989).

Under the first factor, the pertinent consideration is Wilkes' control over the method of performance rather than its control over the result to be reached. *Cy Investment, Inc. v. Natl. Council on Comp. Ins., supra*. The direct evidence establishes that Wilkes controlled the result but not the method of performance. Wilkes pointed out the boundaries of the timber to be cut, set a completion date, specified log lengths and required that NWT and LPL perform the job in a "good and workmanlike manner." These specifications deal with the desired result of the contract, not the manner and means of its performance. *Reforestation General v. Natl. Council on Comp. Ins.*, 127 Or App 153, 167-68, 872 P2d 423 (1994).

Other direct evidence establishes that NWT and LPL had the right to control the method of performance. The parties' contracts specified that NWT and LPL "shall have

---

*Country Fair v. Natl. Council on Comp. Ins.*, 129 Or App 73, 77, 877 P2d 1207 (1994).

[7] ORS 656.005(27) has since been renumbered ORS 656.005(28) by Oregon Laws 1990, chapter 2, section 3, and has since been amended by Oregon Laws 1993, chapter 739, section 23.

full control and direction of the work to be performed." NWT and LPL exercised that control: They worked according to their own methods, provided their own equipment and set their own hours. The first factor is indicative of nonworker status.

■ The second and third factors also support the determination that NWT and LPL were not workers. Wilkes paid NWT and LPL on a different basis than it paid its employees. NWT and LPL were paid by the thousand board feet of logs cut on a single project. Such a payment structure is equivalent to a "fixed sum for a fixed job" and indicative of nonworker status. 1B Larson, *Workmen's Compensation Law* 8-134, § 44.33(c) (1993); *see also Reforestation General v. Natl. Council on Comp. Ins., supra,* 127 Or App at 169. The fact that NWT and LPL could obtain draws can be viewed as supporting either worker or nonworker status and does not affect our conclusion. With regard to the third factor, NWT and LPL furnished their own equipment.

Under the final factor, we consider whether Wilkes had the "right to fire" NWT and LPL. There is no direct evidence on the issue, but the contracts indicate that such a right did not exist. The contracts provided that disputes regarding performance be submitted to arbitration and that the nondefaulting party be awarded costs and attorney fees. DIF also found that Wilkes had the right to withhold payment if the job was not properly completed. These terms are indicative of the parties' equal abilities to enforce the contract and are inconsistent with the conclusion that Wilkes had the right to fire NWT and LPL. The fourth factor indicates that NWT and LPL were not workers.

■ Based on our consideration of the right to control test, we conclude, as a matter of law, that NWT and LPL were not "workers."[8] Because they were not workers, NWT and LPL were not subject to workers' compensation coverage. Although DIF incorrectly determined that NWT and LPL were workers and exempt under ORS 656.027(7), it correctly

---

[8] Because the right to control test is conclusive, we do not apply the nature of the work test. *Reforestation General v. Natl. Council on Comp. Ins., supra,* 127 Or App at 169.

disallowed the additional premiums that SAIF charged Wilkes.

Affirmed.