Submitted on record and briefs June 27, reversed and remanded for reconsideration October 25, 1989

## DAN McCORMACK AGENCY,
*Petitioner,*

*v.*

## EMPLOYMENT DIVISION et al,
*Respondents.*

(88-AB-1481; CA A50564)

781 P2d 370

Jerald P. Keene, and Roberts, Reinisch & Klor, P.C., Portland, filed the brief for petitioner.

Dave Frohnmayer, Attorney General, and Jerome Lidz, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

No appearance for respondent Robert G. Baker.

Before Graber, Presiding Judge, and Joseph, Chief Judge, and Edmonds, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

■ Employer seeks review of an order of the Employment Appeals Board that reversed the referee's decision and awarded claimant benefits. We remand for reconsideration.

The referee found these facts:

"(1) Claimant worked for employer from June 1, 1986 until discharged effective March 14, 1988. (2) Claimant was employer's sales representative for Reebox [*sic*] shoes in eastern Washington, northern Idaho and Montana. (3) As sales representative, it was claimant's responsibility to service the established customers and get new ones. (4) He was to work Monday through Friday from morning to evening until the work was completed. Some weekend work was required. (5) Claimant was paid a monthly salary.

"(6) During 1988, claimant showed a lack of enthusiasm in his work and started neglecting customers. (7) He would not call on them with the frequency that was necessary to establish rapport and good relations. (8) When he did contact customers, his sales methods were sloppy. (9) Once claimant merely placed the merchandise on the bed of his hotel room and watched TV while the customer looked through the shoe samples and catalogs without assistance. Another time claimant appeared more interested in his girlfriend than the customer. (10) The employer started receiving complaints from established customers regarding claimant's attitude and neglect of their store. (11) Claimant's sales decreased by 71% in 1988 while other sales representatives' sales went up by 20%. (12) Claimant had been counseled regarding his sloppy performance, but he did not improve.

"(13) Employer's sales during the first quarter are the most important because during January through March, customers are ordering for delivery during the period June through September, or back-to-school time. (14) Sales during that first quarter are double that of the other three. That sales time is critical for employer's business.

"(15) During March 15 through March 17 (Monday through Wednesday), claimant took time off to attend the Winter Olympics. (16) According to employer's rules, known to claimant, employer is to pre-approve [*sic*] all vacation time requests. (17) Employer would not have approved that particular time off because sales people are expected to be out eight to 12 hours per day during this critical first quarter. (18) Employer discharged claimant based upon his unauthorized

time off from work and failure to effectively cover his sales territory *by neglecting customers and showing a poor attitude to the customers he did service."* (Emphasis supplied.)

On the basis of those findings, the referee made the ultimate finding that employer had discharged claimant for misconduct connected with his work. He specifically found that claimant was less credible than employer.

The EAB adopted findings (1) through (5) and (13) through (18), except that it "restated" finding (18) to read: "Employer discharged claimant based upon his unauthorized time off from work and his failure to effectively cover his territory in its entirety *due to that time off."* (Emphasis supplied.) It added a new finding (19): "The employer received complaints from customers regarding claimant's sales presentations and performance." It then found that claimant was discharged, but not for misconduct. It found, rather, that his taking a vacation at an unauthorized time was an isolated incident of misconduct that did not disqualify him from benefits. OAR 471-30-038(3). As to the other complaints, EAB simply stated that "employer has not shown that claimant's inadequate performance was a basis for termination."

By deleting the referee's findings concerning claimant's alleged performance deficiencies other than taking the vacation, and by failing to make other findings that dealt with those issues adequately, EAB failed to address employer's contention that claimant's termination was the result of a series of events and that the unauthorized vacation was simply their culmination. If the misconduct that the referee described in findings 6 through 12 actually occurred, EAB could conclude that the unauthorized vacation was not an isolated instance. If EAB, nevertheless, were still to find that the vacation was an isolated instance, its reasoning in support of that factual conclusion would have to be more complete than exists in the order under review. In contrast, if EAB were to find that the alleged misconduct in the referee's findings 6 through 12 did not occur, it would have to explain why it disagreed with the referee's finding that employer is more credible than claimant. *Ashmore v. Employment Division,* 70 Or App 516, 690 P2d 522 (1984).

■ EAB must address every contested issue, *Middleton v. Fred Meyer, Inc.,* 79 Or App 443, 446, 719 P2d 73 (1986);

*Hillcrest Vineyard v. Bd. of Comm. Douglas Co.,* 45 Or App 285, 293, 608 P2d 201 (1980), and there must be a reasoned explanation of the relationship between the relevant facts and the conclusion that EAB draws. *See City of Grants Pass v. Employment Division,* 94 Or App 328, 765 P2d 237 (1988); *McCann v. OLCC,* 27 Or App 487, 593-94, 556 P2d 973 (1976), *rev den* 277 Or 99 (1977); *Home Plate, Inc. v. OLCC,* 20 Or App 188, 190-91, 530 P2d 862 (1975). Both of those elements are missing from the order.

Reversed and remanded for reconsideration.