Argued and submitted September 23, 2002, reversed and remanded for
reconsideration January 8, 2003

In the Matter of the Compensation of
Matthew P. Ligatich, Claimant.

Matthew P. LIGATICH,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and City of Lake Oswego,
*Respondents.*

00-01879; A113167

60 P3d 1143

James W. Moller argued the cause and filed the briefs for petitioner.

David O. Wilson argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Claimant petitions for review of a final order of the Workers' Compensation Board (board) that upheld respondents' denials of the compensability of bulges in his intervertebral discs at several lumbar spaces and of a disc protrusion at the L5-S1 space. The issues on review involve the L5-S1 disc protrusion. We hold that the board failed to consider claimant's argument that respondent Liberty Northwest Insurance (insurer) had agreed to accept his claim for that protrusion. We therefore reverse and remand.

We state the underlying facts in accordance with the board's findings, supplemented by the undisputed evidence in the record. Claimant has been a firefighter for respondent City of Lake Oswego for over 20 years. During that period, he occasionally suffered low back pain at work. In November 1994, he injured his back while helping to remove a large man from a car in order to perform cardio-pulmonary resuscitation. He did not seek treatment at that time. On February 26, 1995, he again injured his back while helping to carry an outboard boat motor as part of a river rescue. He first sought treatment from Dr. Nicholson on March 14, 1995. In May, Nicholson ordered an MRI, and claimant filed a workers' compensation claim. The MRI showed disc bulges at several lumbar spaces and a large central disc protrusion at the L5-S1 space. Nicholson commented that L5-S1 was the source of claimant's symptoms and referred him to Dr. Franks, a neurosurgeon. Franks noted that the MRI scan was significantly abnormal and recommended continued conservative treatment. He ordered a second MRI in January 1997; it showed a slight increase in the L5-S1 disc protrusion.

On June 23, 1995, insurer formally accepted claimant's claim as a nondisabling lumbar strain. On February 28, 1996, after receiving additional information from Franks, it amended its acceptance to change the claim classification to "disabling." It closed the claim by a determination order on July 2, 1996, that awarded two percent unscheduled permanent disability. Claimant sought reconsideration. A medical arbiter panel reduced the award to one percent; claimant and insurer subsequently settled the dispute by a stipulated order that increased the award to three percent.

Claimant continued to experience some back pain but worked without restrictions until January 27, 1999, when he was injured pulling a fire hose around corners up a staircase during a training exercise. He was off work for three weeks. He had another MRI on February 9; the radiologist saw no change from the previous MRI. Thereafter, claimant saw Dr. Wayson, a neurosurgeon. Wayson concluded from examining claimant and the MRI that the 1999 MRI, unlike the 1997 one, showed a focal disc protrusion centrally at L5-S1 that compromised the spinal canal; Wayson suspected that it was the source of claimant's complaints. He later gave his opinion that the 1999 MRI showed a herniated lumbar disc, that that condition was a pathological worsening of claimant's condition, and that the January injury had caused the worsened condition.

After the January 1999 injury, claimant filed both an aggravation claim and a new injury claim. Insurer denied the new injury claim, and claimant sought a hearing on the denial. It is not clear from the record what action insurer took on the aggravation claim. Before the hearing, the parties agreed to settle the dispute, and an administrative law judge (ALJ) approved the settlement stipulation on August 16, 1999. The crucial provisions of the stipulation are:

"Claimant filed a claim alleging he incurred a lumbar strain, sustained on February 26, 1995. This claim was accepted, processed, and closed under claim number C604-466654.

"Thereafter, claimant filed a new claim for his low back, as a result of a January 27, 1999 injury. This claim was assigned claim number C604-588974. Liberty Northwest Insurance Corporation denied claimant's new low back claim on March 8, 1999.

"Claimant filed a Request for Hearing to appeal the denial and raise other issues.

"The parties agree to settle all issues raised or raisable as of the time this stipulation is approved by the administrative law judge as follows:

"Liberty Northwest Insurance Corporation rescinds its denial, agrees to accept claimant's claim for aggravation, and to pay compensation according to law. This claim will

be accepted and processed under claim number C604-466654. Claimant agrees to dispose of claim number C604-588974 by withdrawing it and combining it with his old claim (C604-466654)."

On October 25, 1999, after the execution of the stipulation, insurer issued a notice of acceptance of a disabling lumbar strain. On November 12, it closed the claim by an updated notice of acceptance without an award of additional permanent disability. On January 27, 2000, claimant notified insurer that he believed that it had omitted several conditions from its notice of acceptance. He asked insurer to amend the notice of acceptance to include lumbar disc bulges, the disc protrusion at L5-S1, and a herniated lumbar disc.[1] Insurer delayed deciding whether to accept the conditions until it received additional information from Nicholson, who did not respond to its initial requests. In the absence of a reply from Nicholson, insurer did not issue a formal denial or acceptance of the conditions. Claimant treated insurer as having made a *de facto* denial of his claim and sought a hearing. In preparation for the hearing, insurer asked Dr. Thompson to review the file. Thompson concluded that the February 1995 incident may well have caused, or at least worsened, the L5-S1 protrusion but that, at the time of the review, claimant's symptoms were primarily due to his ongoing degenerative back condition. Nicholson then concurred with that conclusion.

After receiving Nicholson's concurrence, insurer issued a modified acceptance, changing the accepted condition to a lumber strain that combined with a preexisting degenerative condition at L5-S1. It denied the other lumbar bulges. It then issued a denial of claimant's current condition on the ground that the major contributing cause was his degenerative condition rather than the 1995 injury. Claimant challenged the denials at the hearing. The ALJ issued an

---

[1] In his letter, claimant relied on the reports of Franks and the radiologists who interpreted the MRIs to support his claim for the disc bulges and protrusions and on the report of Wayson to support his claim for the herniated lumbar disc. In his report, Wayson unquestionably referred to the L5-S1 disc, so it is not clear why claimant treated his diagnosis of a herniated lumbar disc as different from the disc protrusion. That distinction plays no role in the parties' arguments or in our decision.

order upholding insurer's actions. The board adopted the ALJ's order with one modification that is not relevant to our decision.

■     On review, we turn first to claimant's assignment of error that the board failed to address his argument that the stipulated settlement required insurer to accept the L5-S1 condition as compensable. The issue turns on the scope of the August 1999 stipulated settlement of claimant's aggravation and new injury claims. Claimant, relying primarily on Wayson's opinion that there was an increased protrusion at L5-S1, asserts that the settlement operated to accept that increased protrusion as a compensable injury. Insurer, pointing out that claimant agreed to combine his new injury claim with his aggravation claim under the original claim number, argues that claimant is trying to get compensation for a new injury in the guise of a claim for an aggravation of a previous injury. Both arguments have some support in the stipulation itself, in which insurer agreed to withdraw its denial of the new injury claim, while claimant agreed to withdraw that claim and to combine it with his aggravation claim under the original claim number. Insurer also agreed to accept the aggravation claim as so modified. Claimant's withdrawal of the new injury claim tends to support insurer's interpretation, while insurer's withdrawal of its denial of that claim and the combining of that claim with the aggravation claim tend to support claimant's position.

The stipulation does not expressly state whether it contemplates the acceptance of the herniation of the L5-S1 disc that Wayson described or his conclusion that that condition was the result of the February 1999 injury. However, it is implicit in insurer's acceptance of the aggravation claim in the stipulation that claimant's condition had worsened, whatever the cause of the worsening. *See* ORS 656.273(1) (worker entitled to additional compensation for aggravation if condition worsens). Although an aggravation must be attributable to the original injury, *see* ORS 656.273(3) (aggravation requires that there be medical evidence supported by objective findings of worsening attributable to original injury), a new incident may certainly be the cause of a worsening of a previous compensable injury. *Cf.* ORS 656.273(1) (worsening not compensable if major contributing cause is

noncompensable injury). In this case, there is evidence that the lumbar strain that insurer previously accepted was directly related to the protruded L5-S1 disc. Thus, it is possible that the herniated lumbar disc that Wayson described constituted a worsening of the accepted condition rather than a new medical condition. At a minimum, the stipulation does not by its terms foreclose that possibility.

■ The issue, therefore, is what insurer agreed to accept when it entered into the stipulation. The scope of an acceptance is a question of fact. *Columbia Forest Products v. Woolner*, 177 Or App 639, 643, 34 P3d 1203 (2001); *SAIF v. Tull*, 113 Or App 449, 454, 832 P2d 1271 (1992). What the parties intend by a stipulation that results in the dismissal of a request for a hearing is also a question of fact that is specific to each case. *Sperry, Inc. v. Wells*, 127 Or App 700, 703-04, 874 P2d 80 (1994); *see also Gilbert v. Cavenham Forest Industries Division*, 179 Or App 341, 344-45, 39 P3d 883 (2002) (necessary to examine medical records to determine scope of stipulated acceptance when there is no formal acceptance). It is clear from the record that claimant raised to the board the issue of the effect of the stipulated settlement on the sufficiency of the October 1999 notice of acceptance. However, our review of the board's opinion and those portions of the ALJ's opinion that it adopted does not indicate to us that the board considered the issue of the scope of the stipulation. If the board were to conclude that the stipulation required insurer to accept the L5-S1 disc protrusion, then it would have to determine whether it was permissible for insurer subsequently to accept only a lumbar strain combined with a preexisting degenerative condition at that location. The board was required to address every contested issue before it. *See Dan McCormick Agency v. Employment Division*, 99 Or App 47, 50-51, 781 P2d 370 (1989). Because the board's opinion fails to consider a potentially decisive issue that was properly before it, we must remand this case for reconsideration.

■ We note one other issue for the benefit of the board on reconsideration. The board concluded ultimately that none of claimant's injuries caused or worsened the L5-S1 condition. In reaching that conclusion, it determined that, except for Thompson's opinion, there was *no* medical evidence that

any of the lumbar disc bulges on the L5-S1 protrusion was caused or worsened by his injuries. Claimant asserts that Wayson's opinion directly ties the L5-S1 protrusion to claimant's injuries and therefore contradicts the board's statement in its opinion. On remand, the board should reconsider claimant's assertion and, if it rejects that argument, explain why it considers Wayson's opinion to have no evidentiary weight.

Claimant's third assignment of error attacks the board's upholding of insurer's denial of the combined condition of a lumbar strain with an underlying degenerative L5-S1 condition. That assignment depends on whether the L5-S1 condition is the result of claimant's injuries or of a degenerative process. The board will necessarily revisit that issue on remand in light of all of the evidence in the record. The fourth and fifth assignments involve attorney fee issues that also are dependent on the board's action on remand.

Reversed and remanded for reconsideration.