Argued and submitted January 21, reversed and remanded for reconsideration
August 4, 2004

## LEMMA WINE COMPANY,
*Petitioner,*

*v.*

## NATIONAL COUNCIL
## ON COMPENSATION INSURANCE
and Department of Consumer and Business Services,
*Respondents.*

INS 01-05-025; A119784

95 P3d 238

Jerald P. Keene argued the cause and filed the briefs for petitioner.

Michael T. Garone argued the cause for respondent National Council on Compensation Insurance. With him on the brief were Jean Ohman Back and Schwabe, Williamson & Wyatt, P.C.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent Department of Consumer and Business Services. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

This case requires us to venture into the dense thicket of law pertaining to workers' compensation insurance premium rating. Briefly, the Department of Consumer and Business Services (department) employs a classification system to determine the level of premiums that employers must pay for their workers' compensation insurance. Employer challenges the particular classification that the department assigned to some of its workers, which results in a higher premium than employer thinks is appropriate. It argues that the department erred in interpreting applicable classification codes. It also argues that, even if there was no error in interpreting the classification codes, the department erred in failing to address whether the application of those classification codes in this case was unfairly discriminatory. We conclude that the department did not err in interpreting the applicable classification codes, but that it did err in failing to address employer's argument that the application of those codes was unfairly discriminatory. We therefore reverse and remand for reconsideration.

We begin with a brief overview of the classification system, so that the relevant facts may be placed in proper context. The amount of workers' compensation insurance premium that an employer must pay is determined by assigning the employer to applicable risk classifications based on the general nature of the employer's business; different types of businesses involve different levels of risk and, as a result, different levels of premiums. The risk classifications are developed by the National Council on Compensation Insurance (NCCI), a rating organization that is licensed by the department. *See generally* ORS 737.350 - 737.560. The classification codes and the resulting premium rates then are filed with, and approved by, the department. OAR 836-042-0015. NCCI's classification codes also are published in a *Basic Manual of Workers' Compensation Insurance*, known as the *"Basic Manual."* NCCI also publishes a publication entitled *Scopes of Basic Manual Classifications*, known as the *"Scopes Manual,"* which describes and explains the classifications contained in the *Basic Manual*.

As we have noted, under the NCCI classification system, an employer is assigned a standard classification based on the general nature of the employer's work. In some instances, however, a particular group of workers within a business is eligible for a separate classification, known as a "standard exception." Such exceptions do not apply, however, if the general classification "specifically includes" the relevant activity.

An initial classification is performed by the Oregon Workers' Compensation Rating System Review and Advisory Committee, known for some reason as "ORAC." ORAC's decision, in turn, is subject to review by the department, first by an administrative law judge (ALJ), then by the director. Among other things, an employer may challenge a classification as inappropriate to the type of business involved or to a particular category of workers within the business. An employer may also assert that a particular classification is being applied in a discriminatory manner. OAR 836-042-0025.

This case involves the question whether some of employer's workers should be subject to a standard exception. ORAC said they should not. An ALJ reversed, but the director ultimately affirmed the initial ORAC decision that the standard exception does not apply.

We turn, then, to the particulars of this case. The relevant facts as found by the director are not in dispute. Employer is a wholesale distributor of fine wines, which it sells and delivers locally to restaurants and grocers. During the relevant time period, it had 33 full-time employees, including 6 office employees, 11 employees who worked in the warehouse and as drivers, 14 persons who worked in the sales department, and 2 company officers. The sales department consisted of 11 full-time salespersons, 2 supervisors, and 1 manager. Salespersons wrote orders in person and by telephone and presented new wines to customers; each salesperson was provided with a company car for use while contacting his or her accounts. Salespersons did not drive or ride in delivery trucks, deliver wine, or set up displays. Drivers made deliveries and performed physical labor in employer's

warehouse. The majority of employer's payroll was allocated to outside sales.

Before July 1, 1999, wine distributors in Oregon were classified under Code 8018, Store Wholesale NOC. Code 8018 applied to miscellaneous warehouse and distributing enterprises. It expressly permitted outside salespersons to be classified separately under a standard exception code, namely, Standard Exception Code 8742, Salespersons, Collectors or Messengers—Outside. According to the *Scopes Manual*,

> "Code 8742 is applied to outside salespersons, collectors or messengers. Since these employees are common to many businesses, they are considered to be Standard Exceptions. As such they are classified to Code 8742 unless the classification applicable to their employment includes salespersons. Under the latter circumstance the outside salespersons, collectors or messengers are assigned to the classification which includes salespersons, not Code 8742."

In other words, Standard Exception Code 8742 is available when the general classification for the business does not, by definition, already include salespersons. Standard Exception Code 8742 is a relatively low-risk classification.

In the meantime, there also existed at the time another general classification code, Code 7390, Beer and Ale Distributors. The *Scopes Manual* described the code as follows:

> "Code 7390 is applied to dealers engaged in the wholesale distribution of beer and ale. These alcoholic beverages in bottles, cans or kegs are purchased by these insureds from breweries or bottling firms. The cases, cartons or kegs of beer or ale are usually placed in these dealers' warehouses, some of these may have cold storage facilities, prior to being delivered to their customers, e.g., retail outlets, restaurants, bars, etc. This classification contemplates all warehouse employees, route supervisors, drivers and their helpers. Also, beer or ale dealers' salespersons who ride in delivery trucks and take orders and make receipt collections fall within the scope of Code 7390."

Obviously, Code 7390 did not apply to employer at that point. It applied only to dealers engaged in the distribution of beer

and ale, whereas employer is engaged in the distribution of wine. Employer's salespersons could now be classified under Special Exception Code 8742, which was a less expensive risk classification than Code 7390.

Effective July 1, 1999, however, the NCCI submitted a filing in Oregon creating a special state version of Code 7390. Under that filing, the code that previously applied to beer and ale distributors would be "amended to include wine dealers." As ORAC later explained, it had been determined that the wine and beer industries were similar. It also was determined that salespersons working for beer, ale, and wine distributors experienced common risks of injury related to the delivery of the merchandise and setting up displays. The resulting amended version of the *Basic Manual* identified "Special Code 7390" to apply to "Beer, ale or wine dealer wholesale—including outside salespersons and drivers."

At some point after July 1, 1999, employer's business was reclassified under Special Code 7390. Because Special Code 7390 already specifically refers to salespersons, employer no longer was eligible for Standard Exception Code 8742, and the resulting lower premiums, for its salespersons.

In March 2001, employer objected to the new classification. Employer argued that, although it employed salespersons, the reference to such workers in Special Code 7390 must be understood to mean salespersons "who ride in delivery trucks and take orders and make receipt collections," as stated in the *Scopes Manual*'s description of Code 7390. According to employer, because its salespersons do not ride in delivery trucks and take orders and make receipt collections, its workers are not "salespersons" within the meaning of Special Code 7390. That means, employer argued, that its salespersons may continue to be classified under Standard Exception Code 8742.

ORAC affirmed the new classification, and employer sought a hearing before the department. After a hearing, the ALJ eventually concluded that employer was correct. In a proposed order, she concluded that the classification of

employer's salespersons under Special Code 7390 was incorrect because employer's salespersons do not fit the description of "salespersons" as the term is used in that classification. She further concluded that including employer's salespersons in Special Code 7390 "results in a rate that is excessive and unfairly discriminatory."

The department reversed the ALJ's ruling. It concluded that, because Special Code 7390 specifically includes outside salespersons, Standard Exception Code 8742 does not apply to the outside salespersons of a business that is classified under Special Code 7390. The department further concluded that,

> "when a classification specifically includes outside salespersons, it includes all outside salespersons. Accordingly, although [wine dealers'] salespersons 'who ride in the delivery trucks and take orders and make receipt collections' fall within [Special] Code 7390, other salespersons who do not perform these activities for such beverage dealers are also included in this classification."

The department did not address employer's contention that applying Special Code 7390 in this case results in an unfairly discriminatory classification, concluding that the issue was not before it.

Employer now seeks judicial review of the department's final order determining that it is subject to Special Code 7390 and that its salespersons are not subject to Standard Exception Code 8742. In the alternative, employer argues that, even if the application of Special Code 7390 otherwise is appropriate, it is unlawful in this case because it results in an unfairly discriminatory classification.

■    We begin with employer's contention that Special Code 7390 does not apply to its salespersons. Employer argues that, given the undisputed fact that its salespersons do not drive or ride in delivery trucks, deliver wine, or set up displays, that code cannot apply. According to employer, only salespersons who engage in such activities are subject to Special Code 7390 because that special code only *added* phrasing to the existing Code 7390, leaving intact the qualification that appears in the *Scopes Manual* concerning Code 7390—

that the code applies only to salespersons who "ride in delivery trucks and take orders and make receipt collections."

The department responds that, to the extent that it has approved and adopted the NCCI classification codes, they should be treated as agency rules, the interpretation of which should be subject to deference from this court. The department asserts that, although it has approved Special Code 7390, it has not approved the description and commentary concerning that code contained in the *Scopes Manual*. As a result, the department argues, employer's reliance on the wording of the *Scopes Manual* is immaterial. Thus, the department concludes, because the reference to "salespersons" in Special Code 7390 itself contains no qualifications, the conclusion that Special Code 7390 applies to employer even though its salespersons do not ride in delivery trucks and take orders is reasonable and entitled to deference. NCCI also makes an appearance in this proceeding, contending that "substantial evidence supports the [department's] finding that Oregon's Special Code 7390 applies to [employer's] outside salespeople."

At the outset, we consider the nature of the issue before us, specifically, whether we confront—as the department suggests—an agency's construction of its own administrative rule. According to the department, "[b]ecause the classification is ineffective without director approval, it has the force of a rule of the director."

The argument, however, is a bit too quick through the proverbial curves. Logically, it does not necessarily follow that, merely because the director's approval is required before a nongovernmental agency's standard can take effect, the nongovernmental agency's standard itself is an administrative "rule," much less a rule of the agency that approved it. True, the Administrative Procedures Act (APA) defines a "rule" broadly to refer to "any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy[.]" ORS 183.310(9). But that does not necessarily mean that the agency's approval of a private sector standard makes the standard itself a "rule" within the meaning of the APA. Among other things, the APA requires that all "rules" be

adopted and published in accordance with prescribed procedures. *See generally* ORS 183.325 - 183.410. Thus, at least arguably, unless the agency subjects the standards themselves to the rulemaking process, the standards themselves do not become administrative rules merely because an agency approves them. *See Reforestation General v. Natl. Council on Comp. Ins.*, 127 Or App 153, 164, 872 P2d 423, *adh'd to on recons*, 130 Or App 615 (1994), *rev den*, 320 Or 749 (1995) (Although the NCCI *Basic Manual* had been filed with, and approved by, the director of the department, "it does not appear that [the department] has adopted the *Basic Manual* as administrative rules under the APA.").

In this case, we need not determine the precise legal status of the *Basic Manual* and the classification codes that it contains because, even if Special Code 7390 is not an administrative rule, the department's interpretation of which is entitled to deference, employer's proposed interpretation of it is not plausible.

Special Code 7390 applies to "[b]eer, ale or wine dealer wholesale—*including outside salespersons and drivers*." (Emphasis added.) The reference to outside salespersons and drivers contains no qualifications. By its terms, the special code applies to all outside salespersons and drivers, not just those who ride in delivery trucks and take orders. Employer's argument that the reference to "salespersons" in Special Code 7390 should be taken to refer only to salespersons who ride in delivery trucks and take orders is based on the explanation in the *Scopes Manual* pertaining to a different version of Code 7390 from the version that applies in Oregon and that, moreover, applies only to beer and ale distributors. We conclude that the department did not err in construing Special Code 7390 to apply to employer.

We turn to employer's contention that, even if Special Code 7390 otherwise applies, the department erred in failing to address its argument that the application of the code in this case is unfairly discriminatory. The department takes no position with respect to that argument. NCCI, however, contends that employer failed to raise the issue below and that, in any event, we can determine from the existing record that the application of the code is not unfairly discriminatory.

■ As pertinent here, OAR 836-042-0025(3) provides:

"Premiums are unfairly discriminatory if differentials between insureds fail to reasonably reflect the differences in expected losses and expenses to the insurer attributable to the insureds. Workers' compensation insurance rates, rating plans or rating systems are not unfairly discriminatory when different premiums result or different rates apply to insureds if:

"(a) Differences in loss exposures, expense factors or investment income opportunity to an insurer can be attributed to the insureds; and

"(b) The differences are reasonably reflected by the rates, rating plan or rating system."

An employer has the burden of proving that an assigned classification is discriminatory. *Salem Decorating v. Natl. Council on Comp. Ins.*, 116 Or App 166, 170, 840 P2d 739 (1992), *rev den*, 315 Or 643 (1993); *see also Douglas Co. Farmer's v. Natl. Council on Comp. Ins.*, 119 Or App 69, 73, 849 P2d 1144 (1993) (rejecting employer's assertion that assigned classification was unfairly discriminatory; employer had "offered no evidence that NCCI treat[ed] similarly situated employers differently").

We first consider whether employer adequately presented the "fairness" issue below. At the hearing, employer's representative, Lemma, testified in part that there were over 100 wine distributors in the state, that she had contacted 14 of them, and that "none of them were aware that this classification [in which salespersons were classified with warehouse employees and drivers] even existed." She also testified that some of the dealers whom she had contacted continued to be assigned Standard Exception Code 8742, that they therefore "are paying less," and that, to her knowledge, she might be the only distributor who had been reclassified; she theorized that there might be 50 distributors who were still assigned Standard Exception Code 8742. Lemma testified that wine distributors were not all the same in that some, including employer, distributed only wine, whereas others also distributed other products. She also testified that not all wine businesses used their salespersons in the same manner and that she recollected only one incident in which

one of employer's salespersons was injured, involving falling on some stairs. Finally, employer submitted documentary evidence showing that its premiums had approximately doubled as a result of the reclassification of its salespersons.

That testimony and evidence sufficiently raised the issue whether classification of employer's salespersons within Special Code 7390 was unfairly discriminatory as provided in OAR 836-042-0025(3); that is, whether NCCI "treat[ed] similarly situated employers differently." *Douglas Co. Farmer's*, 119 Or App at 73. The department therefore was required to consider that issue. We decline NCCI's invitation to decide the matter for the first time on review and remand for the department to do so on reconsideration. *See Ligatich v. Liberty Northwest Ins. Co.*, 185 Or App 555, 561, 60 P3d 1143 (2003) (where agency failed to consider "potentially decisive" issue properly presented to it, court remanded case for reconsideration; citing *Dan McCormack Agency v. Employment Division*, 99 Or App 47, 50-51, 781 P2d 370 (1989)).

Reversed and remanded for reconsideration.