Argued and submitted October 6, 2009, affirmed June 16, 2010

TTC - THE TRADING COMPANY, INC.,
*Petitioner,*

*v.*

DEPARTMENT OF CONSUMER AND
BUSINESS SERVICES,
*Respondent.*

Department of Consumer and Business Services
INS0704003; A138812

234 P3d 1056

David L. Jorling argued the cause for petitioner. On the briefs were Courtney C. Kreutz, and Radler, Bohy & Replogle, LLP.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

* Brewer, C. J., *vice* Edmonds, P. J.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

This case involves a dispute over the premium rates assigned to employer for its workers' compensation insurance. Employer is a manufacturer of steel replacement parts used in heavy machinery; for purposes of billing employer for workers' compensation insurance, its insurer classified employer's business by a code that applies to businesses engaged in the fabrication of "structural" steel. Employer sought review by the Department of Consumer and Business Services, and the department issued a final order affirming the insurer's classification. Employer seeks judicial review of that order, and we affirm.

For background, we recite the description of the workers' compensation insurance premium classification system set forth in *Lemma Wine Co. v. Natl. Council on Comp. Ins.*, 194 Or App 371, 373, 95 P3d 238 (2004) (citations omitted):

> "The amount of workers' compensation insurance premium that an employer must pay is determined by assigning the employer to applicable risk classifications based on the general nature of the employer's business; different types of businesses involve different levels of risk and, as a result, different levels of premiums. The risk classifications are developed by the National Council on Compensation Insurance (NCCI), a rating organization that is licensed by the department. The classification codes and the resulting premium rates then are filed with, and approved by, the department. NCCI's classification codes also are published in a *Basic Manual of Workers' Compensation Insurance*, known as the '*Basic Manual*.' NCCI also publishes a publication entitled *Scopes of Basic Manual Classifications*, known as the '*Scopes Manual*,' which describes and explains the classifications contained in the *Basic Manual*."

Rule 1.D of the *Basic Manual* provides that an employer is assigned "one basic classification that best describes the business of the employer within a state." However, where "no basic classification clearly describes the business," Rule 1.D.2 provides that "the classification that most closely describes the business must be assigned." The *Basic Manual* establishes that NCCI has the right to "determine the propriety of classification assignments."

The department found the following uncontested facts that describe employer's business:

"[Employer] operates a business fabricating 'wear' parts out of steel to be used as replacement parts on large machines and equipment. [Employer] has a shop in Woodburn, Oregon, with the following tools and equipment: a plasma cutting table, three forklifts (one large, two small) for moving material such as steel plate, a stationary drill, brake press, welders (carbiding tables) and three overhead cranes or lifts. One of their primary products is a 'hammer,' which can weigh between four and 90 pounds, and is used as replacement grinding teeth on heavy grinders used to grind wood debris into bark or mulch-like products. [Employer] fabricates the hammers, and other replacement parts, then sells them to municipalities and other contractors. The purchaser does all installation of the new parts on their heavy equipment."

The insurer audited employer's premium classification in 2006. *See* ORS 737.318 (requiring director to establish a premium audit program); OAR 836-043-0110 (explaining the insurer premium audit program). In the course of that audit, the insurer concluded that employer was more appropriately classified in code 3030, a designation for shops engaged in the fabrication of "structural" steel products, instead of its prior classification in code 3632, a designation for "machine shops."

The *Scopes Manual* provides that "[c]ode 3030 is restricted to a permanently located shop in which an insured engages in the fabrication or assembly of structural iron or steel products" and "is applicable to risks engaged in the manufacture of iron or steel structural parts subsequently used by others in the manufacture of heavy machinery." The *Scopes Manual* defines "fabricating * * * to mean the laying out of the pieces, and the marking, cutting, sawing, drilling, punching, riveting, bolting, welding and assembly of the pieces into finished structural steel products." By contrast, the *Scopes Manual* provides that "[c]ode 3632 applies to the manufacture or repair of machines as well as general job machining" but "only when such operations are not specifically contemplated by another manual classification(s)." The *Scopes Manual* states that code 3632 operations may involve

processes "such as boring, turning, planing, shaping, milling, drilling, punching, grinding, tapping, threading, shearing, bending, forming, riveting, welding, painting, inspecting and testing."

Employer objected to the insurer's reclassification, and, in response, the insurer requested that NCCI perform an independent review of the classification. NCCI conducted a site inspection and concluded that code 3030 was indeed the proper classification. The insurer then submitted a final bill to employer assessing future premiums based on the reclassification.[1]

Employer requested that the department review the billing, disputing the reclassification to code 3030 on the basis that that code applies to the "manufacturing of structural steel products" whereas employer manufactures "wear" parts that are "not structural." (Underscoring in original.) See ORS 737.318(3)(d); ORS 737.505(4); OAR 836-043-0170(1).

At the hearing before an administrative law judge (ALJ), employer's president described the manufacturing operations, but employer did not introduce any expert testimony on the classification of those operations. The insurer called NCCI's auditor, Craddock, who testified that he classified employer's operations based on a site tour during which he observed the equipment, the manufacturing process, and the completed parts. Craddock opined that the equipment was "what you see at a typical 3030 shop" and that the manufacturing processes included "cutting," "drilling of holes," and "welding." Craddock noticed that the finished parts were "fairly heavy" (weighing, on average, approximately 40 pounds) and consistent with the usage of code 3030 for "replacement parts in heavy machinery * * * [that] are part of the overall structure of the machine."

Craddock contrasted employer's operations with manufacturing operations covered by two other codes: code

---

[1] The bill increased employer's premium rate from $4.10 per $100 in wages paid to $8.27 per $100 in wages paid. Insurer expressly waived any right to make that change retroactive due to the advice that it had previously given employer. See ORS 737.310(13) (discussing retroactive application of premium audit reclassifications). The rate change was to be effective as of April 1, 2007.

3040, which, according to the *Scopes Manual*, applies to the fabrication of "nonstructural" and "ornamental" iron or steel work, and employer's former classification of code 3632. Craddock reasoned that code 3040 did not apply to employer because the finished parts are "heavier than anything contemplated under code 3040."[2] Craddock reasoned that code 3632 was inapplicable for three reasons: (1) code 3632 applies only where no other code is a better fit; (2) employer did not have the machinery that businesses classified in code 3632 would have; and (3) although employer engaged in the cutting, drilling, and welding processes involved in code 3632 operations, the typical code 3632 shop would engage in "more machining" processes.

Based on the evidence, the ALJ issued a proposed order concluding that the assignment of code "3030 is appropriate given the findings made by NCCI." In addition, relying on *Salem Decorating v. Natl. Council on Comp. Ins.*, 116 Or App 166, 170, 840 P2d 739 (1992), *rev den*, 315 Or 643 (1993), the ALJ observed that employer had the burden to present evidence in support of its position that it should not be classified in code 3030 and that employer had not met its burden. The proposed order concluded that the classification of code 3030 was appropriate to cover employees involved in "hauling materials belonging to others." The insurer filed an exception to the phrase, "hauling materials belonging to others." Employer did not file an exception to the proposed order.

Initially, upon review of the proposed order, the director proposed to conduct further hearings to determine whether code 3030 "most closely describes the business" under Rule 1.D.2 in the *Basic Manual*.[3] The director noted, "Although both codes 3030 and 3040 apply to * * * some of the same materials and processes, code 3030 applies to structural byproducts whereas code 3040 applies to nonstructural byproducts." The director observed that the term "structural"

---

[2] Code 3040 specifically includes the fabrication of railings, balconies, fire escapes, staircases, iron shutters, or other nonstructural iron or steel products.

[3] The director invited employer to request that this case be suspended pending a decision by the Oregon Workers' Compensation Rating System Review and Advisory Committee. *See* OAR 836-043-0200 to 836-043-0240. Employer never sought a hearing before that committee.

was not defined in either the *Basic Manual* or the *Scopes Manual*.

The insurer objected to the director's request for further hearings, arguing that the *Basic Manual* provides that NCCI is the entity responsible for applying the codes to individual businesses and that NCCI determined that code 3030 applied to employer's business. The insurer also argued that, based on Craddock's testimony, employer's fabrication of parts used in the "overall structure" of heavy machinery was most analogous to a business within code 3030. Employer responded that it had no objection to proceeding without further hearings but reiterated its argument that the term "structural" could not be applied to a "wear part."

The department then issued a final order without conducting further hearings. The final order adopted the findings of fact and reasoning of the proposed order, interpreted the proposed order to have found "essentially, that code 3030 more closely describes the employer's operations than code 3632," and concluded that "[t]he insurer correctly assigned classification code 3030, by analogy, to the employer's steel 'wear' or replacement part fabrication operations."

■ ■ We review the final order to determine if it is supported by substantial evidence in the record. ORS 183.484(5)(c). A finding of fact is supported by substantial evidence "when the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.* In addition, the final order must be supported by substantial reason; that is, it must demonstrate "the *reasoning* that leads the agency from the *facts* that it has found to the *conclusions* that it draws from those facts." *Drew v. PSRB*, 322 Or 491, 500, 909 P2d 1211 (1996) (emphasis in original). As the ALJ correctly stated, employer had the burden to prove that its classification in code 3030 was incorrect. *See Salem Decorating*, 116 Or App at 170 (the party seeking redress has the burden of proof).

Employer advances three assignments of error and characterizes each error as involving either an error of law or a substantial evidence deficiency. Specifically, employer

argues that the department erroneously concluded that code 3030 applies to its business, that the department should have classified the business in code 3632, and that the department should have found that employer's finished products were "nonstructural 'wear' parts." Our initial difficulty addressing employer's assignments is that, despite employer's characterizations, they do not actually raise any error of law or suggest that any of the department's findings lack substantial evidence in the record. Rather, as we understand it, employer argues that the department could not demonstrate any reasoning that would connect those factual findings to the conclusions the department reached—that is, employer contends, that code 3030 could not apply to a business that is not engaged in the manufacturing of *structural* parts, and employer's business therefore must be classified in code 3632 instead of code 3030.

The problem with employer's argument is that the department concluded that code 3030 "more closely describe[s]" employer's operations than code 3632, and it did so without deciding that those operations involve the production of "structural" parts for purposes of code 3030. That reasoning relies on the mandate of Rule 1.D.2 of the *Basic Manual* that the insurer must assign the classification that "most closely describes the business." The issue, then, is whether a different code more closely describes employer's operations, not whether employer manufactures "structural" parts.

In rejecting employer's argument that code 3632 is more appropriate, the department reasoned that code "3030 is appropriate given the findings made by NCCI." We review the basis for that reasoning: The *Basic Manual* provides that NCCI may determine the propriety of the classification assignment; NCCI's evidence on the classification scheme was not rebutted; NCCI explained at the hearing that employer's equipment, manufacturing process, and completed products are more closely described by code 3030; and the department made factual findings regarding the equipment, manufacturing process, and the products related to employer's operations. Within that context, we conclude that the department explained the reasoning that connected its

findings of fact to the conclusion the agency made; the department's reliance on NCCI's findings is supported by substantial reason.

Affirmed.