Argued and submitted May 2, affirmed August 15, 2012

R & R TREE SERVICE, INC.,
*Petitioner,*

*v.*

SAIF CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
INS0904002; A145610

286 P3d 1232

Linda C. Attridge argued the cause for appellant. On the brief was David L. Jorling.

Jamie Contreras, Assistant Attorney General, argued the cause for respondent Department of Consumer and Business Services. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Denise G. Fjordbeck waived appearance for respondent SAIF Corporation.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Petitioner R & R Tree Service, Inc. seeks review of an order of the Director of the Department of Consumer and Business Services (DCBS) upholding a 2008 final premium audit result by SAIF Corporation (SAIF), petitioner's workers' compensation insurer.[1] Based on the audit, SAIF required petitioner to pay an increased premium for the premium year July 1, 2007 to June 30, 2008. ORS 183.480; ORS 737.318; ORS 737.505(4); OAR 836-043-0170(1). We affirm.

An employer pays workers' compensation insurance premiums based on the risk associated with its business. Each employer is assigned a risk classification code based on its level of risk. *Lemma Wine Co. v. Natl. Council on Comp. Ins.*, 194 Or App 371, 373-74, 95 P3d 238 (2004).[2] Generally, an employer is assigned a single classification based on the primary activities of its business. *See TTC-The Trading Co., Inc. v. DCBS*, 235 Or App 606, 608, 234 P3d 1056 (2010). However, when a business involves multiple jobs with different risks, an employer can qualify for multiple classifications for its employees if it also satisfies recordkeeping requirements concerning the work that the employees perform. OAR 836-042-0060. Pursuant to OAR 836-042-0060(1),

> "the payroll of an individual employee shall be divided and allocated among the classification or classifications that may be properly assigned to the employer, *provided verifiable payroll records maintained by the employer disclose a specific allocation for each such individual employee * * *.*"

(Emphasis added.) Absent the required payroll records, "the entire payroll of the employee shall be assigned to the highest

---

[1] Both SAIF and DCBS are respondents in this case, but SAIF has waived appearance on review.

[2] Risk classification codes governing the premiums an insurer can charge its insured are developed by the National Council on Compensation Insurance, a rating organization that has been licensed by DCBS. The codes are contained and described in publications of the National Council of Compensation Insurance known as the *Basic Manual* and the *Scopes Manual* (2004). DCBS then approves the classification codes and resulting premium rates. *Lemma Wine Co. v. Natl. Council on Comp. Ins.*, 194 Or App 371, 373, 95 P3d 238 (2004); OAR 836-042-0015.

rated classification exposure." OAR 836-043-0060(3). The dispute in this case concerns the classification of petitioner's payroll for purposes of workers' compensation insurance premiums and whether SAIF correctly determined that all of petitioner's payroll (other than for clerical workers and outside salespeople) should fall within classification Code 0106, a code that generally applies to above-ground tree pruning and removal, or to the lower-risk Code 9102, which applies to lawn and yard maintenance activities.

The work performed by petitioner's business includes lawn maintenance, shrub pruning, tree trimming, tree removal, stump grinding, wood chipping, and pressure washing. As a general rule, lawn and yard maintenance and on-the-ground tree pruning fit within Code 9102, and "above-ground" pruning, trimming, or tree removal fit within Code 0106. However, any on-the-ground tasks associated with an above-ground task are to be characterized by the higher-risk primary job code. So, for example, if petitioner's crew removed a tree, a Code 0106 task, the grinding of the stump on the ground or the chipping of the tree are to be characterized as Code 0106, even though those activities took place on the ground.

In previous audits, auditors had deferred to petitioner's method of splitting out Code 9102 tasks from Code 0106 tasks, and had assigned some of petitioner's payroll to classification Code 9102. For the audit for the 2007-08 year, a new auditor worked on the account and wanted more precision. The auditor requested original time records for employees, such as time cards, for the time period under examination in the audit. One of petitioner's owners, Jannai Cornett, who managed the books, told the auditor that petitioner did not keep time cards. In fact, although there were no time cards, petitioner's co-owner, Robert Cornett, who managed the work crews, kept daily time and work records for each employee. Typically, the foreman for the employees would report to him at the conclusion of each work day. Robert then made computer entries on an Excel spreadsheet each day, describing the work the employees had performed and noting whether it was above ground (AB) or "below" ground (BG), meaning work performed *on* the ground. One of the prior

auditors had approved of the way Robert kept records, calling it an "excellent system of tracking work and time."

Concerned that they might not be satisfactory to the new auditor, Jannai did not turn over Robert's records. Instead, she transferred Robert's data to another Excel spreadsheet. The auditor found inconsistencies in Jannai's spreadsheets. Jannai testified that she recognized that there were problems with the spreadsheets, which did not always match up with Robert's original entries:

> "So I'm trying to manipulate and try to get all these to match up with all these pretty little drop-down boxes and just make this nice spreadsheet so that when I have the audit, that it was nice, clean sheet. But what happened is I think that things kept getting twisted and changed, and I was sorting and resorting and that when I got to actually looking at my spreadsheet, it—it wasn't even matching up to what it probably should have been, what the original records were, and—and that's—that's the truth and I hate to say that I was doing something I probably shouldn't have been, but I was."

Late in the audit, petitioner finally produced Robert's records to the auditor.

Ultimately, the auditor reviewed all materials that petitioner provided and concluded that, while they differentiated generally between work above the ground and work on the ground, petitioner's records did not sufficiently describe the specific tasks employees had performed to allow the auditor to determine whether petitioner had applied the proper codes to the work. In addition, the auditor and an investigator "tested" a number of jobs during the audit period and determined that they had been erroneously classified as BG rather than AG. While noting that petitioner attempted to divide its payroll, the auditor nonetheless determined that the records, although "verifiable," were insufficient to support a payroll division between the two codes, because they did not adequately differentiate between duties performed. The final audit concluded that petitioner had failed to justify the classification of work in Code 9102, and that all of petitioner's lawn and tree service-performing payroll for the period ending December 30, 2008, should be reported under higher-risk Code 0106. The audit resulted

in SAIF's increase of petitioner's premium by $67,516.11. Petitioner requested a hearing.

At the hearing, the administrative law judge (ALJ) issued a proposed order upholding the final premium audit billing, despite Robert's daily recordkeeping. The ALJ explained, essentially, that, although petitioner kept "verifiable" payroll records describing jobs as having been performed either above ground or on the ground through the AG and BG designations, not all tasks within jobs that were classified as BG were correctly classified within the lower-risk category of Code 9102. Some on-the-ground tasks fall within Code 0106, such as stump grinding after a tree is cut down, and the ALJ concluded that it was not possible to determine from petitioner's records whether some of the tasks designated as BG were nonetheless properly classified within Code 0106. The ALJ explained:

> "[E]ven with the appropriate records [Robert's daily records] there is insufficient evidence to carry employer's burden of proof in this case. Those records do an excellent job of splitting the work by job and by above ground (AG) and 'below' ground (BG). However, the records fail to account for the fact that the 0106 code also includes many duties that are on the ground. Therefore, although the record indicates that much of the on-the-ground work should be 9102, SAIF cannot (and I cannot) automatically attribute all on-the-ground work to code 9102. Accordingly, the verifiable time records are insufficient to answer all of the questions necessary to shift payroll away from the 0106 code and [petitioner] has been unable to prove its case."

In a final order on reconsideration, the director of DCBS adopted the ALJ's findings, conclusions, and reasoning. Accordingly, the director found, as did the ALJ, that Robert's records "do not indicate which portion of the on-the-ground work involved 0106 tasks and which involved 9102 tasks." The director concluded that petitioner had not met its burden of proof in support of a different or divided classification, as required by OAR 836-042-0060.

On judicial review, petitioner contends that SAIF incorrectly moved payroll from Code 9102 and into Code 0106. A significant focus of petitioner's three assignments of error is on whether the director of DCBS erred in

concluding that petitioner's records were not "verifiable" payroll records, as defined in OAR 836-042-0060(4).[3] As an initial matter, DCBS disputes the premise that the director concluded that petitioner's records were not "verifiable." We agree with DCBS that the ALJ and the director concluded that, although petitioner's records were "verifiable," they were insufficient to "disclose a specific allocation for each such individual employee," OAR 836-042-0060(1), so as to justify multiple risk classifications. In the final order under review, the director adopted the conclusions of the ALJ, who expressly found that the records petitioner maintained were "verifiable," and the director did not conclude to the contrary.[4] Accordingly, petitioner's challenge to the final order based on its maintenance of "verifiable" records is unavailing.[5]

---

[3] Subsection 4 of OAR 836-042-0060 provides:

"For purposes of this rule, payroll records of an employee are verifiable if they have the following characteristics:

"(a) The records must establish a time basis, and the time basis must be hourly or a part thereof, daily or part thereof, weekly or part thereof, monthly or part thereof or yearly or part thereof;

"(b) For each salaried employee, the records must also include time records in which the salary is converted to an hourly, daily, weekly, monthly or yearly rate and then multiplied by the time spent by the employee in each classification exposure;

"(c) The records must include a description of duties performed by the employee, to enable the insurer to determine correct classification assignment. Records requiring additional explanation or interpretation are not considered to be verifiable; and

"(d) The records must be supported by original entries from other records, including but not limited to time cards, calendars, planners or daily logs prepared by the employee or the employee's direct supervisor or manager. Estimated ratios or percentages do not comply with the requirement of this subsection and are not acceptable for verification. Verifiable records must be summarized in the insured employer's accounting records."

[4] Confusion arose because the director characterized the ALJ's ruling ambiguously, stating that the ALJ had recommended affirmance of the premium audit billing "because the employer's records, provided by the employer to the insurer during the audit and prior to the issuance of the billing, were not verifiable payroll records as described in OAR 836-042-0060." It is evident from the director's adoption of the ALJ's findings and conclusions, however, that the director concluded that the payroll records were not the kind of verifiable records that justified multiple risk classifications.

[5] On review, DCBS also correctly notes that, in any event, the spreadsheets that petitioner maintained were not supported by original time cards or other work logs prepared by the employees or the employees' direct supervisor. *See* OAR 836-042-0060(4)(d).

Petitioner also contends that the director's finding that petitioner's records do not support a division of risk codes is not supported by substantial evidence, because, contrary to the director's finding and despite some recordkeeping errors, petitioner's records in fact differentiated between Code 0106 and Code 9102. Specifically, petitioner challenges the ALJ's fifth finding as not being supported by substantial evidence:

> "Robert's records, while differentiating between above ground and on the ground work, do not indicate which portions of on-the-ground work involved 0106 tasks and which involved 9102 tasks. (Ex. P7)."

As noted, it is petitioner's burden to show that SAIF's audit billing placing all of petitioner's payroll in Code 0106 is incorrect. *Salem Decorating v. Natl. Council on Comp. Ins.*, 116 Or App 166, 840 P2d 739 (1992), *rev den*, 315 Or 643 (1993). On judicial review, the question is whether the director's order determining that petitioner has failed to meet that burden is supported by substantial evidence. *TTC-The Trading Co., Inc.*, 235 Or App at 612. A finding of fact is supported by substantial evidence "when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.484(5)(c). At the hearing, petitioner offered testimony that Robert was generally aware of the tasks that were within Codes 0106 and 9102, and it appears to be undisputed that Robert's AG/BG classification was simply petitioner's shorthand method of identifying Codes 0106 and 9102, respectively. Petitioner also presented examples showing that, when a job involved above-the-ground tasks, petitioner recorded the entire job as "AG," even if it involved tasks on the ground such as clearing brush or removing trees or stumps. Petitioner contends on review that SAIF was able to point to "only seven instances" out of "some 6,000 entries reviewed" in the audit in which petitioner had incorrectly designated work as BG instead of AG, and even several of those instances were in fact correctly designated. That contention is not supported by the record.

Instead, at the hearing, SAIF presented significant evidence that petitioner's records established more than isolated instances of incorrect data entries. SAIF's

auditor explained that, based on a random selection of 16 customer accounts and his examination of invoices and other documents concerning the work performed for those customers, that, for every one of the 16 customers on at least one of their jobs during the audit period, petitioner had misclassified the work, *i.e.*, there were jobs that petitioner recorded as BG when they should have been recorded as AG. Based on that analysis alone, there were 24 instances of incorrect work designations. Additionally, looking at petitioner's spreadsheets, the auditor discovered that petitioner sometimes recorded payroll for a single job under more than one classification, which was not permissible. When work above the ground and work on the ground were performed at the same job, the entire job was required to be classified at the higher risk classification, Code 0106 (or AG). The auditor attempted to obtain corrected records from petitioner but continued to receive revised spreadsheets that he examined and that contained the same kinds of errors.

The auditor also explained that an investigator for SAIF contacted a selection of customers (some on the original list of 16 accounts analyzed and others who had significant work performed according to the amounts invoiced to them) to verify the actual work that had been performed for the customer and to compare that to the designations Robert had given the work. The investigator testified that she received a group of invoices and then spoke with most of those customers identified in the invoices. She summarized in a spreadsheet the information she had received from the customers concerning the work performed, including whether petitioner's workers had to leave the ground to perform the services. Again, the investigator confirmed numerous errors in which Robert had classified work that was literally performed above ground, such as climbing trees to cut them down, trim them, or remove dead wood, as BG rather than AG.

Thus, the audit revealed numerous errors in petitioner's recordkeeping, and the auditor testified that the inconsistencies happened so commonly that they were "unreasonable." Although the auditor recognized that "[e]verybody makes mistakes," he testified that "there were so many of them" that it went beyond the reasonable

latitude one gives for voluminous recordkeeping of this type. Based on those misclassifications, the auditor determined that petitioner's documentation failed to support a division of codes, and SAIF assigned Code 0106 to all of petitioner's payroll, with the exception of clerical and outside sales payroll.

Although, as petitioner contends, it is clear that petitioner kept records and made an attempt to segregate work so as to differentiate which jobs were subject to Code 0106 and which were subject to 9102, there were multiple errors on the jobs that were selected for review and verification as part of the audit and then, upon closer inspection, on other jobs in petitioner's spreadsheets. Based on the extent of the errors that the audit revealed, the director found that the verifiable time records were not sufficient to justify a division between two codes. Based on the record, the director determined that petitioner simply had not met its burden to show that the premium audit billing for the period July 1, 2007 to June 30, 2008, was erroneous. We have reviewed the entire record and conclude that the director's order is supported by substantial evidence. We accordingly affirm the director's order.

Affirmed.